Argued April 27, affirmed June 8, 1920.

# McDONALD v. SUPPLE.

(190 Or. 315.)

**Pleading—Amendment—Discretion of Court—Implied Contract.**

1. Where the original complaint relied on a supplemental oral agreement modifying a written contract for services in erecting steel dredge-hulls, etc., it was not an abuse of the trial court's discretion to allow plaintiff to file an amended complaint, relying on an implied contract to pay a greater sum; the two causes of action not being inconsistent.

**Work and Labor—Contract—Additional Compensation—Implied Agreement.**

2. Where defendant agreed to pay a fixed sum per ton for constructing steel dredge-hulls out of fabricated steel, and defendant failed to promptly supply the steel, and that supplied did not have numbers, etc., plaintiff, having at defendant's request continued to perform the contract, is entitled to recover additional compensation on the implied contract.

**Contracts—Evidence—Surrounding Circumstances.**

3. Under Section 717, L. O. L., for the proper construction of a written contract, the circumstances under which it was made, including the situation of the subject matter and parties, may be shown.

**Evidence—Technical Meaning of Contract Notwithstanding Presumption.**

4. Under Section 718, L. O. L., evidence is admissible to show that the terms of a written contract have a technical, local, or peculiar significance, notwithstanding the presumption that words are used in their primary and general acceptation.

**Evidence—Contract—Parol Evidence to Supply Omitted Term.**

5. Under Section 713, L. O. L., it is competent to introduce testimony to supply those terms actually agreed upon by the parties to a written contract, but not contained in nor conflicting with an incomplete written contract.

**Evidence—Contract—"F. O. B. Cars"—Fabricated.**

6. In an action on contract for the erection of barges out of fabricated steel, evidence that the steel was not painted, so that the numbers wore off before receipt, was admissible, as well as evidence as to the meaning of the terms "f. o. b. cars," "fabricated," etc.

**Evidence—Contract—Time—Delivery of Steel.**

7. In an action for additional compensation on a contract for the construction of steel barges out of fabricated steel, evidence as to the time of delivery of the steel was admissible, though not specified in the contract.

**Work and Labor—Quantum Meruit—Right to Recover for Extra Work.**

8. Where failure to perform his part of the contract, by defendant, who had engaged a contractor for a fixed price per ton to construct steel dredges out of fabricated material, made the labor more burdensome and expensive, the contractor, having continued the contract at defendant's request, could recover on *quantum meruit*.

**Contracts—Partial Payments—Additional Compensation.**

9. Where a contract for the construction of steel barges out of fabricated materials provided for partial payments, the fact that the contractor accepted partial payments at the contract rate, notwithstanding defendant's failure to carry out his agreement greatly increased the labor cost, etc., did not preclude recovery of additional compensation, where defendant frequently assured the contractor that when the work was done he would make the same right.

**Appeal and Error—Conflicting Evidence—Verdict not Reviewed.**

10. A verdict on conflicting evidence will not be reviewed.

**Work and Labor—Contract—Deviations—Additional Compensation.**

11. Where defendant's deviations from the contract were most serious, and caused the contractor additional expenditures for labor cost, etc., the fact that the deviations were not numerous will not prevent recovery of additional compensation.

[As to right of contractor to recover for extra work ordered by architect, but not ordered in express manner provided by working contract, see notes in 7 **Ann. Cas.** 213; 17 **Ann. Cas.** 81.]

From Multnomah: JOHN P. KAVANAUGH, Judge.

Department 2.

This is an action at law, begun by Robert Wakefield April 17, 1914, in which he set up a cause of action based on a written contract entered into between plaintiff and defendant, and upon an express oral modification of the written contract. The agreement in question required plaintiff to erect and assemble the U. S. Engineers' dredge-hulls, "Multnomah" and "Wakiakum," defendant to furnish the materials and to pay plaintiff $15 per ton for every ton of hull material erected and put together, and $7.50 per ton for the assembling of the trusses and

ladders. Issues being raised, the case proceeded to trial upon the theory that plaintiff was suing for his labor performed and materials furnished under the written contract and the express oral modification thereof as to compensation.

A verdict having been rendered in favor of plaintiff, a motion of defendant for a new trial was granted by the trial court upon the ground that there was no evidence of the alleged subsequent oral modification of the written contract. Upon appeal to this court the judgment of the lower court was affirmed and the cause was remanded. See *Wakefield* v. *Supple,* 82 Or. 595 (160 Pac. 376). By leave of the trial court, plaintiff thereupon filed an amended complaint. The defendant moved to strike paragraph VII therefrom upon the ground that it set up a cause of action inconsistent with and contradictory to the cause of action set forth in the original complaint, and introduced a new cause of action. The motion was denied. Paragraph VII of the amended complaint reads thus:

"That if the materials had arrived fabricated and ready to erect and in proper condition, and in the condition contemplated and agreed upon as hereinbefore set out, the entire work of construction of said two hulls which the plaintiff was to perform, could have been completed within sixty (60) days, and it was contemplated and agreed between the parties that the materials would arrive in sufficient quantities to allow the constant and efficient progress of the work within a few days after the 11th day of February, 1913, so that if the materials had arrived within the time contemplated and agreed upon, and in the condition contemplated and agreed upon, all the work which plaintiff was to do could have been finished by the 20th day of April, 1913, and that at the time of entering into said agreement dated February 11, 1913, it was well known to both

parties thereto that plaintiff was entering into the
same, because plaintiff had available large numbers
of competent workmen, who would be available for
the period of time required to finish the work with
the materials furnished in the condition and in the
time contemplated, and that by using said men in
said period that plaintiff and defendant both knew
plaintiff would be able to do said work much more
cheaply than if plaintiff was to be required to do
the same at a later period during the summer and
fall months, because, as plaintiff and defendant both
knew, labor conditions in and about the City of Port-
land during the summer and fall months would be
and were substantially different, in that during the
summer and fall months plaintiff would be required
to and did pay about twice what workmen could have
been hired for if the work had been done in the time
and was of the kind contemplated and agreed upon
when the agreement of February 11, 1913, was en-
tered into; that, if the materials had arrived at the
time and in the condition contemplated and agreed
upon, plaintiff could have performed said work at
about the cost of $15.00 per ton for the hull mate-
rial, and about $7.50 per ton for the trusses and lad-
ders, but because the material did not arrive until
about the 15th day of June, 1913, and because the
defendant was constantly advising plaintiff that the
material would arrive within a day or two, plaintiff
was required to and did keep large quantities of
equipment on hand ready for use and was required
to and did keep large numbers of men on hand, all
of which largely added to the expense and burden
of doing said work and thereby greatly damaged
plaintiff; that when the materials actually arrived
their defective condition prevented the men from
expeditiously handling the work and interfered with
the progress of the workmen to the extent that only
about one-third of the amount of work was per-
formed by the workmen of what would have been
performed with proper materials, and only about
one-third efficiency could be obtained in the use of
the plaintiff's equipment, and when the materials

arrived their condition of themselves caused the men to many times a day stand idle at different parts of the work until the defective condition of the material could be remedied; that the ways furnished by the defendant for the construction of said two hulls were upon a steep slope, and because the materials did not arrive so that the lower hull could be promptly completed the high spring waters of the Willamette River came upon and over said hull during the course of construction after considerable work had been done thereon, and filled all the joints with sand and debris, thereby causing and requiring the cleaning of said joints, the partial dismantling of the work, and great trouble, annoyance and confusion, and as a result purely of the defaults and breaches on the part of the defendant the plaintiff was required to and did perform labor and services and furnish materials in the construction of said two hulls, which were totally unlike and had no relation to the kind. of work, labor and materials it was contemplated and agreed plaintiff was to furnish under said agreement of February 11, 1913; that the reasonable cost and value of the work as actually performed, on account of the defaults and breaches of the defendant, was actually $29,408.98, whereas, if the materials had arrived within the time and in the condition contemplated and agreed upon, the reasonable cost and value of the said materials would have been approximately $9,000.00, and that said increases of costs and the damage to plaintiff cannot be measured by attempting to apportion same to the detailed parts of the performance of the work and construction of the said two hulls, for the reason that the work as actually performed cannot be traced to or applied upon the work contemplated, and the condition of the performance of the same is substantially different, and by reason thereof the plaintiff. does not claim damages for each several breach within itself, as it is impossible to separate the same and apply it against the total result, because of the difference in the work contracted for

and performed, but plaintiff alleges that all of plaintiff's work, even with all of the defaults and breaches on the part of defendant, was performed by the 13th day of November, 1913, and was thereupon accepted by the defendant, the defendant now retains the same and the benefit thereof; that the reasonable worth and value of the work, labor and materials so furnished by plaintiff to defendant upon said two hulls, is the sum of $29,408.98, of which defendant has paid only $8,755, leaving a balance due plaintiff in the sum of $20,623.98, which balance and any part thereof defendant refuses to pay, and said defendant refuses to recognize that this plaintiff has any rights in the premises, other than the rights fixed in the written agreement hereinbefore referred to, and said defendant refuses to consider, with plaintiff, plaintiff's rights in the premises, and defendant renounces and denies plaintiff's rights in the premises.''

Defendant filed an answer, which after admitting a portion and denying a portion of the allegations of the complaint, set up three separate defenses, which may be summarized as follows: First, that Wakefield was himself responsible for the excessive and burdensome services performed by him, by his negligence in failing to provide proper tools or skillful employees, and Wakefield had agreed to adjust his differences with the Great Lakes Engineering Works and had so adjusted them; that time was of the essence of the Supple-Wakefield contract, and by Wakefield's negligence in the premises Supple had been subjected to payment of various penalties; second, that the plaintiff, by having prosecuted his original complaint, was barred from prosecuting the amended one; third, that all the work done by plaintiff was done under the original contract of February 11, 1913. Plaintiff filed a reply denying generally all the allegations in defendant's answer,

which conflicted with the averments of the complaint. The trial resulted in a verdict and judgment in favor of plaintiff for $10,000.   Defendant appeals.

AFFIRMED.

For appellant there was a brief over the. names of *Messrs. Langguth & Lyons* and *Mr. L. E. Crouch,* with oral arguments by. *Mr. H. L. Lyons* and *Mr. Crouch.*

For respondent there was a brief and an oral argument by *Mr. Coy Burnett.*

BEAN, J.—Error is predicated, first, upon the amendment of the complaint; second, in refusing to grant the motion to strike out paragraph VII of the amended complaint; also in denying defendant's motion for a nonsuit. These assignments of error raise practically the same question. It will be noticed that in the original complaint plaintiff alleged that it was agreed in writing that he should perform certain services for defendant for a certain fixed compensation, and that by a subsequent and supplemental oral agreement between plaintiff and defendant the defendant agreed to pay plaintiff for his services what the same were reasonably worth.

1. The amended complaint which was filed before the trial, sets forth the facts constituting an implied agreement to pay, in addition to the written contract prices, such a sum as would reasonably compensate plaintiff for the services performed by him under the changed conditions and circumstances set forth in the amended complaint, which work was accepted with a full knowledge of all conditions by defendant Supple.   We do not think there is such a difference or inconsistency between an express agreement and

a promise implied by law as to preclude an amendment or change from one to the other, to be made before trial. In the case of *Elder* v. *Rourke,* 27 Or. 363 (41 Pac. 6), the two allegations were included in the same complaint, and it was approved by this court. In that case plaintiff alleged that he

"performed work and labor for defendant, at his special instance and request, in cutting, heading, and harvesting the wheat then growing on nine hundred and sixty-five acres of land, at the agreed and stipulated price of one dollar and twenty-five cents per acre, amounting in the aggregate to the sum of one thousand two hundred and six dollars and twenty-five cents; that said work and labor was and is reasonably worth the sum of one dollar and twenty-five cents per acre, and of the reasonable aggregate value above stated."

Error was there assigned in permitting plaintiff to testify that the work performed by him was reasonably worth $1.25 per acre. It was held that the evidence was within the issues made by the pleadings. In *Zimmerle* v. *Childers,* 67 Or. 465, at p. 471 (136 Pac. 349, at p. 351), Mr. Justice RAMSEY said:

"The provision of Section 102, L. O. L., providing that the amendment of a pleading shall not substantially change the cause of action or the defense, *does not apply to amendments made before trial.* It applies only to amendments made during the trial."

See *Talbot* v. *Garretson,* 31 Or. 256 (49 Pac. 978), and *Mallory* v. *City of Olympia,* 83 Wash. 499 (145 Pac. 627).

As we view it, the amendment was properly allowed in the discretion of the trial court. No new facts were set up in the amended complaint, and

the defendant was not prejudiced by the change in the pleading.

2. The amended complaint averred and the testimony on the behalf of plaintiff tended to show, that the defaults on the part of defendant, Supple, in the performance of the original contract were so numerous and so vital that they caused the plaintiff, Wakefield, to perform his labor under different conditions, at a different time, and in a different manner, than contemplated or agreed upon by the parties in the original writing, and so much more burdensome and difficult than was originally agreed upon, that plaintiff, Wakefield, was not required to accept the compensation fixed in the original contract as the measure of his recovery; but by reason of the important changes in the work to be done and the defaults on the part of defendant, Supple, in his performance of the contract, plaintiff was entitled to recover in addition to the contract price such a sum as would reasonably compensate him for the services performed by him and accepted by the defendant. There was no error in denying the motion for nonsuit: *Hayden* v. *Astoria,* 74 Or. 525 (145 Pac. 1072); Id., 84 Or. 205 (164 Pac. 729).

3-7. Error is claimed on admission of testimony referring to the condition of the steel for the construction of the dredges at the time of its arrival in Portland, when it was delivered by defendant, Supple, to plaintiff, Wakefield, as to the lack of numbers on the different parts of the material to show how they were to be put together, and the lack of paint on the steel, so that the numbers would not come off. The testimony clearly showed that about 75 or 80 per cent of the numbers had dropped off in transporting the steel from Michigan to Portland, Ore-

gon, by reason of exposure to the elements and the erosion of the steel, making it very difficult and practically impossible to place the several parts on the dredge or assemble the same, and rendering the assembling of the parts, according to the testimony, like a "Chinese puzzle," and taking two or three times as long to perform the work as it would if the material had been properly painted and marked and increasing the cost in the same proportion.

We think that we should start with the premise that the plaintiff was entitled under the contract to have the material delivered to him in a reasonably suitable condition for assembling. Over the objection and exception of the defendant's counsel, Mr. S. R. Booth, a witness for plaintiff, was permitted to testify thus:

"Q. What is the fact as to steel which has been painted and the numbers put on top of that, and shipped from back in Michigan or that distance, as to whether those numbers on top of the paint would stay on or not?

"A. Oh, those numbers always stay on."

Defendant complains that over his objection and exception the court permitted testimony to be introduced explaining the meaning of the word "fabricated," as used in the contract between Supple and Wakefield, whereby Supple agreed to "deliver f. o. b. cars, all of the steel work for hull, fabricated and ready for erection, but not riveted, nor bolted up, and all of the steel work for trusses and ladder, fabricated and riveted, but not assembled," which tended to show that, according to the term as used "by the trade," the material when fabricated would go together in a good workmanlike manner. For the proper construction of an instrument the circum-

stances under which it was made, including the situation of the subject of the instrument and of the parties to it, may be shown, so that the judge will be placed in the position of those whose language he is to interpret: Section 717, L. O. L.

The terms of a writing are presumed to have been used in their primary and general acceptation, but evidence is admissible to show that they have a technical, local, or otherwise peculiar signification, and were so used and understood in the particular instance, in which case the agreement shall be construed accordingly: Section 718, L. O. L. It is competent to introduce testimony to supply those terms actually agreed upon by the parties to a written agreement, but not contained in nor conflicting with an incomplete written contract: Section 713, L. O. L. The contract in question did not state when the material was to be delivered. There was much controversy over this point: See *Hayden* v. *Astoria,* 74 Or. 525 (145 Pac. 1072); Id., 84 Or. 205 (164 Pac. 729); *American Contract Co.* v. *Bullen Bridge Co.,* 29 Or. 549 (46 Pac. 138); *Stuart* v. *University Lbr. Co.,* 66 Or. 546 (132 Pac. 1, 1164, 135 Pac. 165); *Holmboe* v. *Morgan,* 69 Or. 395 (138 Pac. 1084); 17 Cyc. 741; 2 Elliott on Contracts, § 1634.

Numerous other objections and exceptions were saved by defendant to the introduction of the testimony, which we do not deem necessary to set forth in this memorandum. We find no reversible error in the admission of the testimony.

8. The testimony on behalf of plaintiff tended to establish such changes in the work caused by the failure of the defendant to perform his part of the contract, which made the labor more burdensome and extended the same to two or three times the amount it would ordinarily have been, if the material had

been delivered at the time and in the condition agreed upon. Therefore the plaintiff could properly recover upon a *quantum meruit: Hayden* v. *Astoria,* 74 Or. 525 (145 Pac. 1072); Id., 84 Or. 205 (164 Pac. 729); *Gray* v. *Jones,* 47 Or. 40 (81 Pac. 813); *Demott* v. *Jones,* 2 Wall. (69 U. S.) 1 (17 L. Ed. 762, see, also, Rose's U. S. Notes); *Salt Lake City* v. *Smith,* 104 Fed. 457 (43 C. C. A. 637).

9. Under the contract Wakefield was entitled to partial payments as the work progressed, and he submitted various statements to defendant with such object in view, and accepted money under such estimates. It was not contemplated that such advance payments should be a final settlement of any part of the work, and the contention of defendant that plaintiff is thereby estopped from claiming additional compensation cannot be maintained. The evidence tended to show that, in different conversations between Wakefield and Supple, the latter told Wakefield in effect to go ahead and do the work, and Supple would make it all right with him when he got through. A similar question was carefully considered by Mr. Justice McCamant, in *Hayden* v. *Astoria,* 84 Or., at p. 220 et. seq. (164 Pac. 729). See *Sweeney* v. *Jackson County,* 93 Or. 96 (178 Pac. 365).

10. It was the claim of defendant, as asserted in his pleading and by his testimony, that the increase in amount of time consumed for the labor was caused by the fault of plaintiff. The issues in that regard were squarely raised, and were determined by the verdict of the jury. We are not concerned in the conflict of the testimony.

11. It is contended on behalf of defendant that there were only two deviations from the original

96 Or.—32

plan of the contract, and that as a matter of law the deviations were not numerous enough to abrogate or change the original contract. Such a departure from the original contract cannot be determined by the number of deviations, as one important change might render the contract an entirely different one. The testimony tended to show that the steel, when delivered to Wakefield, was "partly fabricated" or in process of fabrication. Let us suppose that it had not been "fabricated" or prepared for erection at all. That would have been but one change, and yet it would entirely change the agreement of the parties, and the plaintiff would not have been required to construct the dredges for the same compensation mentioned in the written contract.

Exception is also saved to the introduction of testimony as to the number of rivets to be driven to the ton of steel. This question was practically eliminated from the case by the instructions of the court to the jury as stated in appellant's brief.

Wakefield proceeded with the construction of the dredges after the failure of the defendant to deliver the material as agreed, at the urgent request of defendant, Supple, and was entitled to recover a reasonable compensation caused by the changes referred to, upon the same principle that a contractor is entitled to recover for extra work performed in addition to the contract.

The cause has been tried by two juries. Two verdicts in favor of plaintiff have been rendered. We find no reversible error in the record. The judgment of the lower court is therefore affirmed.

AFFIRMED.

McBRIDE, C. J., and BENSON and JOHNS, JJ., concur.