Argued June 19; affirmed September 15; rehearing denied
October 20, 1931

# TEISER *v.* SWIRSKY ET AL.

(2 P. (2d) 920, 4 P. (2d) 322)

*Herbert L. Swett* and *S. J. Bischoff,* both of Portland (Dey, Hampson & Nelson, of Portland, on the brief), for appellant.

*Edward A. Boyrie,* of Portland (William B. Layton and Edward A. Boyrie, both of Portland, on the brief), for respondent.

ROSSMAN, J. This is an appeal from a decree of the circuit court which awarded judgment in the sum of $5,000 to the plaintiff, who is trustee in bankruptcy of Herman's, Inc., a corporation, upon an alleged balance due the latter upon subscriptions to its corporate stock made by the defendant Leon Bernstein and one D. Solis Cohen, now deceased, whose estate is represented by the defendant Charles Kahn. According to the complaint, the subscriptions of these two individuals were made on behalf of the defendants, Samuel Swirsky, Abe Weinstein, Moe Weinstein, and J. Weinstein.

The following facts are free from dispute and reveal the issues awaiting our attention: In August, 1926, the defendants, Samuel Swirsky, Abe, Moe, and J. Weinstein, decided to form a corporation to be known as Herman's, Inc., with a capitalization of

$30,000, represented by 300 shares of stock. They agreed that Swirsky should supply one-half of the needed funds and that the three Weinsteins, who are brothers, engaged in business under the firm name of Weinstein Bros., should supply the other half. For reasons which were proper the four desired to conceal their ownership of the corporate stock, and hence concluded that William Herman, son-in-law of Swirsky, should subscribe for 75 shares; that his wife, Stella, should subscribe for 75 shares more; that D. Solis Cohen, the attorney who was employed to form the corporation, should also subscribe for 75 shares; and that his office associate, Leon Bernstein, should subscribe for the balance. At the time of the formation of the corporation the subscriptions were made in the above contemplated manner. Prior to that time Swirsky had effected an agreement, in the name of William Herman, with one Phil Harris, a merchant who was rapidly approaching insolvency, to purchase Harris's fixtures for the sum of $10,000 and his lease for $5,000. Swirsky was prompted to acquire an interest in the venture because he desired to establish Herman in business. The Weinsteins' interest was due to two circumstances: (a) Harris was indebted to them, and the cash he would derive from a sale to the new corporation would enable him to discharge his debt to them; and (b) the Weinsteins, being part owners of the building where this business was located, were desirous of keeping a tenant in that storeroom. The fixtures, as part of an established going business, were worth more than $10,000. Harris's lease was accompanied with a deposit of $5,000, to assure his compliance with its provisions, and was worth the amount of the deposit. At the time of the formation of the corporation the fixtures and lease were transferred

to it by appropriate instruments of conveyance and assignment. The stockholders at their first meeting, September 3, 1926, elected as directors, William and Stella Herman, D. Solis Cohen, and Leon Bernstein. Upon the same day the directors met and an instrument in the form of minutes, which purports to record the transactions that then took place, was prepared by Cohen and signed by Stella Herman as secretary, she having been previously elected to that office. When the meeting adjourned Cohen retained in his possession a volume entitled "Corporation Record" in which was included the certificate of incorporation and in which was recorded the stock subscriptions, the acceptance thereof, etc., together with the corporate bylaws. He also retained the instrument in the form of minutes to which we have just referred. When the plaintiff took office he discovered that instrument fastened in an appropriate place in the above described volume. We quote from it the following:

"Mr. Herman then stated that he had obtained a lease to the premises occupied by the corporation in the Royal Building on the southwest corner of Broadway and Morrison streets in the city of Portland, and the fixtures therein contained, and that he had obtained same for the purposes of the corporation. On motion duly seconded, the following resolution was adopted:

"RESOLVED: that the corporation accept from William Herman, an assignment of the lease now held by him on the premises occupied by the corporation in the Royal Building on the southwest corner of Broadway and Morrison streets, Portland, Oregon, and assume all the obligations resting in said lease upon the said William Herman, and that it receive also from William Herman the fixtures purchased by him from the former occupant of said premises, Mr. Phil Harris, to be applied upon the payment as cash for the stock

of the corporation subscribed for by William Herman and Stella Herman, and that said stock be so issued as fully paid."

After Herman had transferred to the corporation the above mentioned lease and fixtures Swirsky paid to it $2,500, and in November of 1926 paid $2,500 more. The Weinstein brothers made similar payments at those same times. Four certificates of stock, each in the amount of 75 shares, were delivered to the above directors. Cohen and Bernstein handed their certificates, properly endorsed, to the Weinsteins. Immediately following its formation, the corporation commenced to do business, but was adjudged a bankrupt December 27, 1927. Later the plaintiff brought this suit, charging that the above facts indicate that a balance of $5,000 remains unpaid upon the stock subscriptions. The defendants contend that the corporation stock has been fully paid for in the manner that follows: After insisting that the preliminary proof failed to indicate that the above quoted minutes were a part of the corporate records, they submit that those recitals indicate that the fixtures only were conveyed to the corporation for $15,000 of its capital stock, and urge that the lease, which the parties stipulated was worth $5,000, entitles them to a credit of $5,000 more. By the addition of these two sums to the two $5,000 cash contributions they account for $30,000, the capitalization of the corporation.

Specifically, the defendants argue: (1) That the proof failed to show the alleged minutes were ever adopted as such by the directors; (2) that the alleged minutes are ambiguous in their references to the lease, and that the parol evidence submitted by the defendants shows that they are entitled to a credit of $5,000

on account of the assignment of the lease; (3) that corporate minutes establish only prima facie the truth of their recitals, and that their contents may always be impeached by parol evidence collaterally. Defendants submit that their parol evidence shows that the parties agreed the fixtures were worth $15,000, and the lease $5,000, and that such credits should be allowed upon the conveyance of those items to the corporation.

In addition to the foregoing contentions, the appellant Swirsky argues: (1) That the liability upon the stock subscriptions was not joint, and that since the minutes indicate full payment of the Herman stock no liability can be attached to Swirsky; (2) that the above facts show that the corporation received full value for all of its stock; and (3) that in the absence of any allegations and proof of fraud the above facts entitle the defendants to an order of dismissal.

We shall consider these contentions in the above order. The defendants concede that the aforementioned minutes (1) bear the signature of Stella Herman; (2) that the directors had elected her to the office of secretary; (3) that the minutes were written by Mr. Cohen; (4) that the directors held a meeting September 3, 1926, at the conclusion of which Cohen requested Mrs. Herman's signature to the alleged minutes; (5) that all other recitals in the alleged minutes correctly state the events which transpired; (6) that at the aforementioned directors' meetings the fixtures and lease, together with their values, were discussed by those present; (7) that the purpose of the meeting was to effect the organization of the corporation, the acquirement of these items of property, and the issuance of stock in payment of them; (8) that following the meeting the corporation treated the lease and fixtures as its own; and (9) that no other meeting of the

directors or stockholders was ever held. The defendants in support of their contention that the alleged minutes have not been shown to constitute any part of the corporate records, point out (a) that the proof did not show that the minutes were ever read for approval before a meeting of the board of directors; (b) that the alleged minutes remained in the possession of Cohen and not in the possession of the secretary, nor upon the corporation's premises; and (c) that the proof shows that on September 3, 1926, no formal action by the submission of a resolution and a vote thereon was taken.

It is the duty of the secretary of a corporation "to keep a fair and correct record of all the official business of the corporation": Section 25-213, Oregon Code 1930. Annual meetings of the board of directors are contemplated by our laws: Section 25-215, Oregon Code 1930. It is agreed that no other record was kept of the meeting of September 3, 1926, than the above. The testimony of Mr. Cohen who prepared the above writing shows "the minutes were dictated at the time of the meeting." He added, when his attention was directed to the resolution as set forth in the challenged minutes, "I guess that is just as it was." There can be no serious doubt that Cohen was employed by all members of the group to do all things necessary to create the corporation. Herman testified that Cohen was "my attorney." Swirsky testified that all negotiations and conferences preceding the purchase of the lease and fixtures, and preliminary to the formation of the corporation were held in Mr. Cohen's office. He also testified that the parties fully informed Cohen upon all details so as to enable him to draft the necessary documents. In fact, it seems from Swirsky's testimony that Cohen was intrusted by him with the

responsibility of paying the purchase money to Harris. The answer, in which Swirsky joined, admits without any qualification whatever, the following averment of the complaint:

"That D. Solis Cohen and Leon Bernstein had no actual financial interest in said corporation, but subscribed for 75 shares of stock, respectively, at the request of and pursuant to instructions received from the defendant Samuel Swirsky and the defendants Abe Weinstein, Moe Weinstein and J. Weinstein;"

Thus it appears from the testimony and admission of Swirsky that in the formation of the corporation Cohen followed his directions. However, Swirsky directs our attention to the following allegation, contained in the new matter appearing in the answer:

"In fact the said Cohen and Bernstein subscribed to said stock as an accommodation to the defendants Weinstein for the purpose of concealing the stock interest of the said Weinsteins, and that in reality said stock subscriptions of said Cohen and Bernstein were made in behalf of said defendants, Abe Weinstein, Moe Weinstein and J. Weinstein."

It will be observed, however, that this averment does not negative the admission that Cohen acted "pursuant to instructions received from defendant Samuel Swirsky * * *." But, even if the two were inconsistent, the admission would prevail: 49 C. J., Pleading, p. 119, § 112. But if Swirsky after having made the above admission in his pleading intended to deny that Cohen was his agent in the formation of the corporation, one would expect to find in his testimony some express declaration upon that subject. No such denial appears anywhere in his testimony. In fact, a careful reading of the evidence readily induces the belief that Swirsky, like the other interested parties,

regarded Cohen as an attorney who was acting for all. We come now to the relationship between the Weinsteins and Cohen. The above quoted portion of the complaint was also admitted by them because all defendants united in the one answer. Hence, the above averment of the answer is also chargeable to them. Alex Weinstein testified that the relationship between himself and Mr. Cohen was so cordial that "I considered him almost like a father to me."

Familiar rules of agency and of evidence, which we need not review herein, when applied to the above facts, demand the conclusion that the challenged minutes were properly identified. See, for instance, *Lowry National Bank v. Fickett*, 122 Ga. 489 (50 S. E. 396). They constituted the declarations or voice of the corporation. It was not necessary that Mrs. Herman, the secretary of the corporation, should have penned the minutes with her own hand. It was entirely proper for her to adopt the record as written by Mr. Cohen. The fact that the minutes were not read by the group before Mrs. Herman attached her signature likewise is an ineffective objection. Both Cohen, their author, and Mrs. Herman, who signed them, were directors. The by-laws of the corporation provide: "The officers herein named shall perform the regular and ordinary duties which are usually those of a corporation, to wit: * * * the secretary as taking care of the minutes and general business." All interested had an opportunity to read the minutes if they so wished, and all knew that Mrs. Herman had signed them. One year hence another meeting should have been held, in compliance with our statutes, at which these minutes would ordinarily have been read. Not only those twelve months but three months more passed before any criticism of the minutes was voiced.

Apparently no effort was ever made to alter them, even after the alleged error was discovered. The fact that Mr. Cohen in the bankruptcy proceedings, who was then still a director of the corporation, used those minutes and referred to them in the manner which we have already indicated, removes all remaining objection. We are satisfied that the minutes constitute a part of the corporate records.

■■ The defendants, however, argue that the minutes' reference to the lease is ambiguous and claim that this specific part mentions no quid pro quo which the corporation was to give in consideration of the assignment of the lease. They contend that a proper construction of the minutes indicates that 150 shares of corporate stock was to be issued in satisfaction of the Hermans' subscription upon conveyance of the fixtures only. In the construction of an instrument the court must endeavor to place itself in the situation occupied by the parties when they employed the challenged language. The surrounding circumstances are always employed and the document must be read in the light of them: 6 R. C. L., Contracts, p. 849, § 239. This being true, it seems to us that this court, like any individual intrusted with the duty of carrying into effect the provisions of the resolution and knowing that the Hermans had subscribed for only $15,000 worth of stock and had paid only $15,000 for the lease and fixtures, should not find any difficulty with that instrument. Its language construed in the light of those circumstances indicates that $15,000 of stock should be delivered upon delivery of both the lease and the fixtures.

Next, it is contended that the minutes establish only prima facie the truth of their recitals and that the evidence which they supply may be impeached col-

laterally. We deem it unnecessary to express an opinion upon the troublesome problem whether such minutes are protected by the Best Evidence Rule because it seems to us that the impeaching testimony upon which the defendants rely fails to accomplish the result desired by them. We depend much upon the findings of the circuit court judge whose careful consideration of this case is revealed not only by the transcript of the trial but also by his memorandum decision. We have, however, read and considered with much deliberation the testimony, exhibits, and the very able briefs of counsel, but find ourselves in accord with the conclusions of the circuit court. Beyond referring to the two following items, we shall not set forth a further review of the evidence. Mr. D. Solis Cohen, the attorney for the aforementioned group, was a lawyer of unusual ability, of wide experience, and a man of sterling character. The group made him fully acquainted with their plans after which he prepared the instruments transferring the lease and fixtures from Harris to Herman, and from the latter to the corporation. Thus he had opportunity to acquaint himself with the details of the pending transaction. He also prepared the articles of incorporation, the minutes reciting the election of directors, etc. Next, he took office as one of the directors and then prepared the challenged minutes. Finally, he testified before the referee affirming the truth of the recitals in the minutes. According to the testimony of one of the Weinsteins and one of their present attorneys, the two of them spoke to Mr. Cohen immediately following his quitting of the witness stand and inquired whether he did not feel that the minutes were in error. What followed is significant—he did not return to the witness chair to make any alterations in his testimony.

Another significant fact is the circumstance that in the corporation ledger and journal the entries concerning the fixtures and lease are undated, and the entry in the ledger of a value of $15,000 for the fixtures plainly shows that $10,000 was first written as the value of that item. No explanation was made by any one of this alteration.

It thus appears that an able, experienced attorney, well acquainted with his clients' plans, and who sustained to some of them at least an unusually friendly relationship, drafted these minutes. Later, when his attention was directed to them, affirmed their accuracy. It is our opinion that the parol evidence submitted by the defendants fails to overcome the effect of the corporation minutes.

■ Since Swirsky, Alex Weinstein (as the representative of his firm), Cohen and Bernstein were present at the time the minutes were presented by Cohen and received the signature of the secretary, those minutes were admissible as evidence against these defendants: Thompson on Corporations (3d Ed.), § 1966, and note 66 A. L. R. 1328.

■ We come now to the contention of the appellant Swirsky that the liability is not joint. He predicates this argument upon a contention that the evidence failed to disclose any authority in Cohen to subscribe for stock in his behalf. We have already referred to admissions made by the answer which conceded the truth of that portion of the complaint which averred "That D. Solis Cohen and Leon M. Bernstein * * * subscribed for 75 shares of stock respectively at the request of and pursuant to instructions received from defendant Samuel Swirsky * * *." We have also referred to the testimony of Swirsky. We add the following excerpt taken from the testimony of Alex

Weinstein (the reference is to Cohen): "A. He was not only acting for me but for Mr. Herman and Mr. Swirsky." We conclude that this contention is without merit.

We have also examined with care the two remaining propositions presented by Swirsky. We believe, however, that they present no reason for overturning the result reached in the circuit court. Our conclusions as to the facts, stated above, sufficiently indicate our reasons.

The decree of the circuit court will be affirmed. Costs will be allowed to neither party.

BEAN, C. J., BROWN and RAND, JJ., concur.

---

Petition for rehearing denied October 20, 1931

ON PETITION FOR REHEARING
(4 P. (2d) 322)

ROSSMAN, J. A petition for a rehearing presented by the appellant Swirsky, and accompanied by a very able brief, argues that we were unwarranted in affirming the decree of the circuit court against the petitioner. The brief convinces us that our decision errs in its statement that Swirsky attended the meeting of the board of directors of September 3, 1926. Our misconception of this fact, however, did not play an important part in the formation of our conclusion. Mr. Herman, Swirsky's son-in-law, and Mrs. Herman, his daughter, attended that meeting, as well as Mr. Cohen, who, as we have stated in our previous decision, was the attorney employed by Swirsky and the Weinstein brothers to do all things necessary in the creation of the corporation. Before the meeting of the board of directors Swirsky had conferred with

Cohen upon more than one occasion. Herman had co-operated with Swirsky in the negotiations which preceded the purchase of Harris's fixtures and lease. In fact, the bill of sale for the fixtures and the assignment of the lease were taken in the name of Herman, although Swirsky had paid the purchase price. It thus appears that the minutes were written by an attorney who represented Swirsky and received the approving signature of his daughter in the presence of his son-in-law. The sole reason which prompted Swirsky to undertake this venture was to establish Herman in business. These being the facts, we still remain satisfied that the minutes were receivable in evidence and that their recitals were chargeable against Swirsky.

■ The petition also expresses a belief that we attached too much importance to the admission contained in the answer wherein the defendant (including Swirsky) admitted that the subscriptions of Cohen and of Bernstein were made pursuant to instructions received from all of the defendants. The brief accompanying the petition argues that the admission was an inadvertent one and directs attention to what the brief terms "a stipulation" that the stock subscriptions, made by Bernstein and Cohen, were on behalf of the Weinstein brothers. An examination of the record fails to convince us that the colloquy which passed between the attorneys amounted to a stipulation. We believe that the attorneys were doing nothing more than reviewing the pleadings. If this colloquy had been deemed by them at that time as amounting to a stipulation of the character now maintained by Swirsky it would have relieved him of all liability. And it would seem strange that an order of dismissal had not been sought in favor of Swirsky at once. However, it was not pri-

marily the admission in the answer but the proof revealing the nature of the transaction which persuaded us to our conclusion. We felt satisfied, and so remain, that the purchase of Harris's business and the formation of the corporation were the acts of Swirsky as well as of the Weinstein brothers. We quote from the words of the attorneys who represented Swirsky, as well as the Weinstein brothers, in the circuit court: "This case was tried by us in the lower court as representing all of the defendants. * * * The case was tried by us in good faith in the lower court on the theory that both Mr. Swirsky and Weinstein brothers were exactly on the same footing. Consequently we were not able to present his contention for him on this appeal."

It is next argued that the testimony of Mr. Cohen was not admissible in evidence against Swirsky. When the manuscript containing Cohen's testimony was offered in the circuit court the specific objection now urged against it was not voiced. But even if Cohen's testimony were stricken from the record enough would remain capable of producing conviction in our minds that the subscriptions aforementioned were made on behalf of Swirsky as well as of the other parties.

The above being our conclusions, it follows that the petition for rehearing must be denied.

BEAN, C. J., BROWN and RAND, JJ., concur.