Argued February 28, reversed April 30, 1952

# BARMEIER *v.* OREGON PHYSICIANS' SERVICE
### 243 P. 2d 1053

*H. Lawrence Lister,* of Portland, argued the cause for appellant. On the brief were Gray & Lister, of Portland.

*Ernest J. Burrows,* of Portland, and *George H. Layman,* of Newberg, argued the cause and filed a brief for respondent.

Before BRAND, Chief Justice, and HAY, ROSSMAN, LUSK, LATOURETTE, and WARNER, Justices.

HAY, J.

Defendant, Oregon Physicians' Service, is an Oregon corporation, organized as a hospital association under chapter 173, General Laws of Oregon, 1917, which is codified as §§ 101-901 to 101-909, inclusive, OCLA. Prior to May 27, 1948, such corporation had entered into a contract with plaintiff, Dona Barmeier, under which it undertook, for a consideration, to procure for and furnish her with required medical and hospital services under conditions set forth in a certificate called a Special Medical and Hospital Coverage Certificate for Employed Individuals, issued by the corporation to her. For brevity, we shall refer to defendant as "O.P.S." On May 27, 1948, plaintiff was the victim of a collision with an automobile operated by one John Wagner, and as a result thereof received serious physical injuries. Because of such injuries, she was, for a considerable period, confined in a hospital under the care of physicians. The total of her expenses incurred for hospitalization, physicians' services and nursing was $4,297.35.

The objects and purposes for which O.P.S. was organized are those set forth in § 101-901, OCLA, viz., contracting or agreeing within the state of Oregon, with individuals, families, employees, associations, societies, or with employers for the benefit of employees, for the furnishing of medicine, medical or surgical treatment, nursing, hospital service, ambulance service, and dental service.

Although organized as a stock corporation, defendant is essentially a cooperative health association of a type or pattern now familiar to the modern economic scene. It was designed to furnish to the lower-income

group of society medical and hospital services at low cost, prepaid in installments which are adjusted to the ordinary individual or family budget. According to its articles of incorporation, it does not operate for the profit of its stockholders, but utilizes its receipts to provide medical and related services and supplies to contractees.

Plaintiff's contract with O.P.S. was one intended to cover employed individuals having a yearly net taxable income of $6,000 or less. She paid therefor, quarterly in advance, the sum of $12 per quarter year.

Under the contract, O.P.S. agreed to procure and make available to plaintiff, with certain exclusions and limitations, the necessary medical and surgical services required by her by reason of illness or non-occupational injury. One of the "exclusions and limitations" is the following:

"13 (f). The benefits of this contract do not apply to any injury or illness of the member caused by the negligence or wrongful act of any other person, except to the extent that if the member entitled to the benefits of this contract shall be injured, or shall suffer illness, because of the wrongful act or negligence of any other person and thereafter shall make all reasonable efforts to recover from such other person and anyone responsible or answerable for such other person's negligence or wrongful act, O.P.S. will procure for the member the benefits of this contract which cannot be made available out of funds reasonably recoverable from, or through, such other person. Such funds shall be deemed not reasonably recoverable from, or through, such other person if it shall reasonably appear that should an action therefor be prosecuted, and judgment therefor be obtained, against such person and anyone responsible or answerable for such other person's negligence or wrongful act, execution on such judgment would be unavailing."

The car which collided with plaintiff and brought about her injuries was owned by Edward J. Holmes and Karl G. Steinbeck, doing business under the name and style of Covey's U-Drive. On October 11, 1948, plaintiff brought an action in the circuit court for Multnomah County against Wagner, the driver of the car, and Holmes and Steinbeck, as owners thereof, to recover $75,000 general damages and $5,352.25 special damages for injuries. On June 23, 1949, by stipulation of the parties, the action was dismissed as to Holmes and Steinbeck, with prejudice and without costs. On September 5, 1949, Mrs. Barmeier accepted from Wagner's insurance carrier the sum of $4,800, in full settlement of all her rights, claims and demands against Wagner. It appears that that amount was probably all she could have obtained had she prosecuted her case to judgment and levied execution thereon. From the $4,800 she paid her attorney $960 for his services, which left $3,840 in her hands. She has not paid any of her medical or hospital bills. Upon making settlement with the insurance company, she executed a general release of all claims. On April 6, 1949, she commenced the present action, seeking to recover from O.P.S. the medical and hospital expenses incurred by her in respect of her personal injuries in the sum of $4,297.35, besides $1,000 attorney's fees and her costs and "expenses".

The complaint is based upon plaintiff's contract with O.P.S., designating it as a certificate of insurance. It recites the injuries suffered by plaintiff, the medical and hospital expenses which she incurred as a result thereof, and defendant's refusal to pay such expenses. A copy of the contract is attached to the complaint as an exhibit. Defendant answered by general denial,

with formal admissions, and, for an affirmative defense, alleged its organization as an Oregon corporation, and pleaded the contract between plaintiff and defendant, and specifically that portion thereof which is set out hereinabove. The affirmative answer alleged, in that connection, that plaintiff's injury or illness, which necessitated the medical and hospital expenses set up in her complaint, were caused by the negligence of the above-mentioned Holmes, Steinbeck and Wagner; that, on October 11, 1948, plaintiff brought an action at law against such persons to recover damages for the injuries which she sustained through their negligence; that the action was still pending; that, among the damages sought to be recovered therein, were the costs and charges for the identical medical and hospital services which plaintiff is seeking to recover in the present action; that, on June 23, 1949, pursuant to a stipulation between the parties in the action against Holmes, Steinbeck and Wagner, such action was dismissed as to Holmes and Steinbeck, with prejudice and without costs; that, inasmuch as the medical and hospital expenses for which plaintiff seeks to recover herein were made necessary by reason of the negligence and wrongful acts of said Holmes, Steinbeck and Wagner, plaintiff is entitled to no benefits under her contract with defendant until it shall be established that recovery cannot be made from Holmes, Steinbeck and Wagner, or any of them.

Plaintiff demurred to the affirmative answer, on the ground that it did not state facts sufficient to constitute an answer or defense. The demurrer was overruled, and plaintiff filed a reply, which was in effect a general denial, with affirmative matter to the effect that, on September 5, 1949, she secured from

the insurance carrier covering Holmes and Steinbeck and Wagner the sum of $4,800 ''in full settlement of all her rights, claims and demands against said three named parties or either [sic] of them, which settlement was predicated upon a voluntary settlement by and between the plaintiff and John Wagner,'' the other two defendants, Holmes and Steinbeck, theretofore having been voluntarily dismissed and released from the action by stipulation of the parties; that, before effecting such settlement, plaintiff made diligent inquiry regarding the financial standing of Wagner, and determined that he had no known property or other assets, that he had a family of approximately seven children, that, shortly after the accident, he and his family left Portland and went to Toppenish, Washington, that the full amount of insurance covering Wagner at the time of the accident was $5,000, and that such sum was all that plaintiff might have expected to recover from him, whether by voluntary settlement, judgment, execution, or otherwise; that said $4,800 was received as a compromise settlement for general and special damages; that therefrom plaintiff paid her attorney the sum of $960; that, as a result of the automobile accident, plaintiff sustained numerous grievous and serious injuries to her person; and that the demands which she made upon the defendants in the damage action were $75,000, general damages, and $5,352.25, special damages, which sums were reasonable and justifiable.

Defendant filed a general demurrer to the reply, which was overruled. The cause thereafter was tried by the court without a jury, resulting in judgment in favor of plaintiff and against O.P.S. in the sum of $3,330.73, the further sum of $350 as attorney's fees, and costs and disbursements. Defendant appeals.

Error is assigned upon the entry of judgment in favor of plaintiff. O.P.S. argues that, as plaintiff recovered from the tort feasor a sum in excess of the total of the obligations which she incurred for medical and hospital expenses, O.P.S. is not liable to her under the contract.

As we have said, the accident to plaintiff occurred on May 27, 1948. On June 4, 1948, O.P.S., by letter, advised a physician who was treating plaintiff, as follows:

"Our contract provides that we are not responsible for medical expenses incurred by a subscriber as the result of the negligent or wrongful acts of another person. If the subscriber makes all reasonable effort to collect from the other person, we will assume responsibility, within the limitations of the contract, for medical expenses that cannot be paid from the money recovered.

"The information submitted by the subscriber to this office indicates that Miss Barmeier intends to recover sufficient monies to pay the doctor and/or hospital bills.

"It is our suggestion, therefore, that your statement of charges be rendered directly to this subscriber as soon as possible. It is understood, of course, that if this subscriber complies with the provisions of our contract and is unable to pay you from the money recovered, your unpaid charges will be taken care of by O.P.S., within the limitations of the contract, in the usual manner."

Copies of such letter were furnished to plaintiff and to her attorney, so that they were timely informed as to the stand taken by O.P.S. in the premises.

The lower court, in a memorandum opinion overruling plaintiff's demurrer to the affirmative answer, held that the contract must be construed strictly against O.P.S., citing, in that connection, 29 Am Jur

180, Insurance, § 166. The cited authority does lay down the rule of strict construction against the party who has drawn the contract, which is usually, of course, the insurer. It says: "The general rule is that terms in an insurance policy, which are ambiguous, equivocal, or uncertain to the extent that the intention of the parties is not clear and cannot be ascertained clearly by the application of the ordinary rules of construction, are to be construed strictly and most strongly against the insurer, and liberally in favor of the insured, so as to effect the dominant purpose of indemnity or payment to the insured, * * *"

■ As to this, we think that, while the contract was ambiguous as hereinafter noted, it was not so ambiguous that the intention of the parties could not be ascertained clearly by application of the ordinary rules of construction.

The lower court cited further, in this connection, *Hamilton Fire Ins. Co. v. Greger,* 246 NY 162, 158 NE 60. In that case, the company had insured defendant against damage to his automobile. The automobile was destroyed in a collision with a railroad train. The insurer paid the insured $2,000 as indemnity, and took from him a receipt which recited that the payment was in full of all claims and demands for loss and damage to the insured property, expressly recognized the insurer's right of subrogation, and assigned to the insurer the insured's claim against the railroad company for damage to the automobile. Greger received personal injuries in the collision, and he brought suit against the railroad company for damages in respect of his personal injuries as well as for property damage, but his complaint did not clearly indicate that the property damage sued for included the damage to

his automobile. Thereafter, through a compromise settlement, he received $3,000 from the railroad company, executed a general release in its favor, and dismissed his action. The insurance company then sought to recover from Greger the $2,000 which it had paid him. Recovery was denied. It was held that the company's theory that Greger had received moneys from the railroad company which equitably belonged to the insurance company could not be sustained, as it had not been shown that such moneys included payment for the damage to the automobile, and there was no inference to that effect.

The case is to be broadly distinguished from the case at bar, in that, in the latter, (if our interpretation of the contract is correct), Mrs. Barmeier covenanted to make all reasonable efforts to recover from the tort feasor her medical and hospital expenses, while Greger made no such covenant. Moreover, as stated, it was not clear that Greger had included damages for destruction of his car in his action.

O.P.S. insists that it is not doing an insurance business; that its contract is one of service and not one of insurance. There is some authority for its position in this regard. It is said in 29 Am Jur, 1951 Pocket Part, 4, Insurance, § 12.5, that a majority of the cases hold that a corporation, whether or not organized for profit, the object of which is to provide members of a group with medical and hospital services, is not engaged in the insurance business. See *State ex rel. Fishback v. Universal Service Agency,* 87 Wash 413, 151 P 768, Ann Cas 1916C, 1017; Annotations, 63 ALR 715, 731; 167 ALR 323.

The principle of insurance is indemnity. Section 101-101, OCLA, defines it thus: ''Insurance is a con-

tract whereby one undertakes to indemnify another against loss, damage or liability arising from an unknown or contingent event, whereby the insured or his beneficiary suffers loss or injury." See *Hall v. Metropolitan Life Ins. Co.*, 146 Or 32, 34, 28 P2d 875, wherein this court held that insurance, under the foregoing definition, did not include a contract of annuity.

 Our statutory definition of insurance conforms to that generally accepted. See 29 Am Jur 47, Insurance, § 3, note 6. Physical injuries or illnesses are casualties "arising from an unknown or contingent event." We are not required to determine whether or not the contract under consideration is one of insurance, and, in any event, O.P.S., as a "hospital association", is not subject to the provisions of the general insurance code. This code (Ch 203, Gen Laws of Oregon, 1917), is complete in itself, and sets forth the various kinds of insurance which it regulates. It does not include hospital associations. Provision for these was made by a separate act, ch 173, General Laws of Oregon, 1917. See, generally, as to hospital insurance and the like, Group Health Plans: Some Legal and Economic Aspects, 53 Yale L J, 162, 172; The Legal Problems of Group Health, 52 Harv L Rev 809, 814, 815; Levy and Mermin, Cooperative Medicine and the Law, 1 Nat'l Lawyers Guild Q 194, 206, 214.

 We are not required to decide whether or not the equitable principle of subrogation is applicable to the contract in suit. Under the circumstances of the case, that question does not arise. To simplify the problem, we restate the provision of the contract under which defendant claims exemption, thus: If the member is injured by the negligence of another, and shall make all reasonable efforts to recover from such negligent

person for his negligence, O.P.S. will procure for the member the benefits of the contract to the extent that such benefits cannot be made available out of funds reasonably recoverable from such negligent third person. Sufficient funds to cover the "benefits" contracted for were actually recovered by Mrs. Barmeier from the tort feasor, or, rather, from his insurer. The requirement that, in order to claim the benefits of the contract, the member should make all reasonable efforts to recover from the tort feasor means, simply, to recover for the necessary medical and hospital expenses. It was a condition of the covenant or promise of benefits or services to be furnished by O.P.S., and, in default of performance of such condition, O.P.S. was relieved of performance on its part. Restatement, Contracts, § 260, and Comment b.

There being no statutory provisions preventing them, the parties to the contract had the right to limit the liability of O.P.S. and place upon its obligations any conditions that they pleased. 29 Am Jur 184, Insurance, § 166, n. 8. The rule is not otherwise although the conditions of limitation may be harsh or onerous. Idem. n. 9. Courts cannot ignore such conditions, for to do so would be to make a new contract for the parties. *Hoffman v. Employer's Liability Corp.,* 146 Or 66, 72, 29 P2d 557.

There is an ambiguity apparent in the contract. The ambiguity lies in the fact that *what* the member is to make all reasonable efforts to recover is not expressly stated. To resolve the ambiguity, we must seek to interpret the language used by applying thereto the rules for the interpretation of integrated contracts. One of the pertinent rules is that the writing must be interpreted as a whole. *Rosenau v. Lansing,* 113 Or

638, 648, 232 P 648, 234 P 270; *Champion v. Hammer,* 178 Or 595, 604, 169 P2d 119; Restatement, Contracts, § 235 (c). Applying this rule, we find that the contract reads that O.P.S. is responsible, in such cases, only to provide for the member those benefits of the contract "which cannot be made available out of funds reasonably recoverable" from or through the tort feasor. Our interpretation of this language is that the obligation assumed by the member is that, before he may require O.P.S. to furnish him with the benefits of the contract under circumstances of negligent third party responsibility for his injuries, he must use all reasonable efforts to recover from the tort feasor such amount of money as may reasonably be recoverable to defray his necessary medical and hospital expenses in that regard. When he has used all such reasonable efforts, O.P.S. becomes obligated to provide for him the benefits of the contract to the extent that these cannot be made available from the funds, if any, reasonably recoverable (which, of course, includes funds actually recovered) from the tort feasor. If no funds are reasonably recoverable, or recovered, (the member having used all reasonable efforts to that end) then O.P.S. must procure for him all the benefits of the contract.

To fortify our conclusion in this regard, we resort to still other rules of interpretation. The first of these is that which requires us to take into consideration all the circumstances accompanying or surrounding the transaction. *McDonald v. Supple,* 96 Or 486, 495, 190 P 315; *Crowell Elevator Co. v. Kerr, Gifford & Co.,* 114 Or 675, 680, 236 P 1047; *Teiser v. Swirsky,* 137 Or 595, 604, 2 P2d 920, 4 P2d 322; *Haynes v. Douglas Fir Exploitation & Export Co.,* 161 Or 538, 549, 90

P2d 207, 761; Restatement, Contracts, § 235 (d). The second is that which requires us to take into consideration the principal apparent purpose of the parties. Such purpose is given great weight in determining the meaning to be given to the ·manifestations of their intention. Restatement, Contracts, § 236 (b).

■ Applying these rules, we find that the circumstances which accompanied or surrounded the making of the contract were as follows: O.P.S. was organized to procure medical and hospital services at reasonable rates to members of a low-income group; it was in no sense a commercial insurer or one operated for profit; plaintiff was a member of the low-income group which O.P.S. sought to serve; O.P.S. entered into a contract by which it agreed, for a consideration, to procure and furnish necessary medical and hospital services for plaintiff; in the event that plaintiff should suffer injury by reason of the negligence of a third person, however, the contract expressly limited the obligation of O.P.S. to the procuring of such medical and hospital services only as could not be made available from funds reasonably recoverable from said third person. Plaintiff, in that regard, clearly obligated herself to make all reasonable efforts to recover such medical and hospital expenses from the negligent third party. That was an express condition of her contract.

There could have been no possible reason why O.P.S. should have required plaintiff to covenant to endeavor to recover from the negligent third party, except for the medical and hospital expenses made necessary by the third party's tort. Those medical and hospital expenses were the subject of the contract; it was obviously a matter of indifference to O.P.S. whether or not plaintiff should endeavor to recover

from the tort feasor for her general damages, or, in fact, for anything other than her medical and hospital expenses. Plaintiff sued the tort feasor indeed, and effected a compromise settlement with him. She collected by such settlement, after deducting her attorney's fees, sufficient moneys to have defrayed her medical and hospital expenses so far, at least, as the amount thereof has been determined by the judgment herein, but she preferred to retain such moneys in partial compensation for her general damages. We think that she was entitled to deduct a reasonable sum for attorney's fees. The reasonableness of the amount deducted has not been questioned. No doubt the net amount which she collected was entirely inadequate to recompense her for her injuries, but the fact that she did not choose to apply it upon her medical and hospital expenses relieved O.P.S. of all liability in the premises. This may seem to be a harsh conclusion, but it follows inevitably from our interpretation of the contract.

We are of the opinion that, in entering judgment against defendant, the trial court erred. The judgment is reversed, and the cause dismissed.

Tooze, J., considering himself disqualified, did not participate in the decision of this case.