PREPAID DENTAL SERVICES, INC., a Utah Corporation, Plaintiff and Appellant,

v.

Roger C. DAY, Commissioner of Insurance of the State of Utah, Defendant and Respondent.

No. 16826.

Supreme Court of Utah.

Aug. 7, 1980.

John Preston Creer and David F. Evans of Senior & Senior, Salt Lake City, for plaintiff and appellant.

William G. Gibbs, Salt Lake City, for defendant and respondent.

WILKINS, Justice:

Plaintiff proposes to market a prepaid dental services plan which, it alleges, is not

an insurance plan and not subject to regulation under the Insurance Code. The Utah State Insurance Commissioner (Commissioner), however, determined both that the plan is within the definition of insurance in § 31–1–7[1] and is a Health Maintenance Organization (HMO), subject to regulation under § 31–42–1, et seq. The Commissioner also found that plaintiff did not propose to offer sufficient basic health services, required of HMOs under § 31–42–3(6) and denied plaintiff a Certificate of Authority, forbidding it to conduct business.

Plaintiff brought action in the District Court of Salt Lake County praying for declaratory judgment that the plan it proposed is not subject to regulation by the Insurance Commissioner. Both parties moved for summary judgment upon stipulated facts. The District Court granted defendant's motion, sustained the findings of the Commissioner, and denied plaintiff's petition. Plaintiff appeals.

Plaintiff's plan consists of the following:

1. Plaintiff would contract with employers to arrange for specific dental services to be provided to the employer's employees, as needed. The employers would pay to plaintiff a specific monthly charge, determined by the number of employees and their families who agreed to be participants.

2. Plaintiff would also contract with licensed dentists to provide these specific dental services. Plaintiff would pay the dentists a monthly payment whether they performed any services or not, the payments also being determined by the number of participants enrolled.

3. A participant would be required to have the dental services provided by the dentists with whom plaintiff had contracted, rather than choosing a dentist of his own, and for certain services would make scheduled co-payments to the dentists.

4. Plaintiff would require a performance bond from the dentists to ensure that the promised services continued to be available to participants during a contract year.

5. Plaintiff's plan would not provide emergency care, in-patient hospital and physician care, out-of-area coverage or out-patient medical services.[2]

By § 31–1–7, the Utah Legislature has defined insurance:

Insurance is a contract whereby one undertakes to indemnify another or pay or allow a specified or ascertainable amount or benefit upon determinable risk contingencies.

Plaintiff asserts that its plan is not an insurance plan as the benefits it promises to participants do not involve determinable risk contingencies, and that plaintiff, by its various contracts, does not undertake to indemnify or assume any risk.

This Court has observed that insurance contracts involve "risk on the part of the insurer to pay on the happening of the contingency and the spreading of the risk over the group who pay the premiums." (Justice Crockett's concurring opinion in *In re Clark's Estate*, 10 Utah 2d 427, 354 P.2d 112 (1960), quoted with approval in *Utah Funeral Directors & Embalmers Assoc. v. Memorial Gardens*, 17 Utah 2d 227, 408 P.2d 190 (1965).) To be sure, there is a certain risk, in this matter, that participants will need dental care, and that risk under plaintiff's plan would be spread over the group of participants. Nevertheless, that risk is not *assumed* by plaintiff under its plan. Plaintiff would obligate itself to pay to the dentists no more (and no less) if the participants need dental care than if they do not need such care. It was just such a lack of assumption of any risk that led this Court to determine that the contracts in *Clark*, and *Utah Funeral Directors*, supra, were not insurance contracts.

---

1. All statutory references are to Utah Code Ann., 1953, as amended, unless otherwise indicated.

2. Health Maintenance Organizations are required to offer such services under § 31–42–6(2)(c).

In *Jordan v. Group Health Ass'n*, 107 F.2d 239 (D.C.Cir.1939) the Court determined that a health plan, operated by a non-profit corporation which paid its enrolled doctors a monthly payment was not insurance, saying:

> Whether the contract is one of insurance or of indemnity there must be a risk of loss to which one party may be subjected by contingent or future events and an assumption of it by legally binding arrangement by another. Even the most loosely stated conceptions of insurance and indemnity require these elements. Hazard is essential and equally so a shifting of its incidence. If there is no risk, or there being one it is not shifted to another or others, there can be neither insurance nor indemnity. Insurance also, by the better view, involves distribution of the risk, but distribution without assumption hardly can be held to be insurance. These are elemental conceptions and controlling ones. [at 107 F.2d 245]

Most courts which have considered this question have determined that such contracts do not constitute insurance where the professional is paid a "retainer" as distinguished from a fee for the service provided. See *State ex rel. Fishback v. Universal Service Agency*, 87 Wash. 413, 151 P.2d 768 (1915); *Barmeier v. Oregon Physicians' Service*, 194 Or. 659, 243 P.2d 1053 (1952); *California Physicians' Service v. Garrison*, 28 Cal.2d 790, 172 P.2d 4 (1946).

The District Court distinguished *Fishback* and *Jordan* on the ground that, here, plaintiff not only would agree to use its best efforts to obtain dental services for participants, but would require a performance bond of the dental group to assure the delivery of those services. The District Court held that the requirement of the performance bond indicated that plaintiff had assumed some risk. We do not agree. A performance bond might indicate that the indemnitor, or bondsman, had assumed a risk, but *plaintiff*, does not, under its plan, undertake to pay any benefit upon the happening of any contingency. Insurers are required under our code to maintain large deposits and reserves of assets in order to assure the public that the insurer will be able to meet its obligations to pay benefits upon the happening of a contingency, when it has assumed that risk. There is no reason to require such deposits and reserves of plaintiff as it would not obligate itself to pay anything in addition to the regular monthly payments to dentists pursuant to its contract with the dental group regardless of the happening of any contingency. Thus, plaintiff is not an insurer, as it would assume no risk.

Retainer plans, such as the one proposed by plaintiff have long been recognized as providing a beneficial and economical alternative to the dominant "fee for service" in delivery of health care. See note, *Legal Problems of Group Health*, 52 Harv.L.Rev. 809 (1939); Havighurst and Bovbjerg, *Professional Standards Review Organizations and Health Maintenance Organizations: Are They Compatible?*, 75 Utah L.Rev. 381 (1975).

In 1973, the Utah Legislature provided for limited regulation by the Commissioner of organizations offering comprehensive health care plans, operated on a per capita, or retainer basis under the Health Maintenance Organization Act § 31–42–1, et seq.[3] The legislative purpose of this act is stated in § 31–42–2:

> As a guide to the interpretation and application of this act, the public policy of this state is declared to be as follows: The legislature wishes to eliminate legal barriers to the establishment of health

---

3. Both the Commissioner and the District Court assumed that the Legislature intended HMOs to be deemed insurance companies merely because it placed the regulation of such organizations with the Insurance Commissioner. Yet the Legislature prohibited HMOs from using words descriptive of insurance in their titles or promotional materials (§ 31–42–22), and specifically provided that HMOs should not be subject to regulation as insurers (§ 31–42–31).

maintenance organizations which provide readily available, accessible and quality *comprehensive health care* to their members and to encourage their development as an alternative method of health care delivery. The state of Utah must have reasonable assurance that health maintenance organizations offering health plans within this state are financially and administratively sound and that such organizations are in fact able to deliver the benefits which they offer. [Emphasis added.]

The Commissioner found that plaintiff's plan is within the definition of an HMO in § 31–42–3(4), which provides:

(4) "Health maintenance organization" means any person:

(a) Who furnishes, either directly or through arrangements with others, health care to an enrolled member in return for periodic payments; the amounts of said payments are agreed upon prior to the time during which the health care may be furnished; and

(b) Who is obligated to the member to arrange for or to directly provide available and accessible health care.

An individual is not a health maintenance organization when he contracts to render professional or personal services which he performs himself.

But the Commissioner also found that plaintiff is prohibited from transacting business as it does not provide basic health services, as defined in § 31–42–3(6).

(6) "Basic health care services" means as a minimum, emergency care, inpatient hospital and physician care, out-patient medical services, and out-of-area coverage.

Thus, plaintiff is, under the Commissioner's's reasoning, prohibited from transacting business because it does not offer "comprehensive health care," though the Legislature has stated that its purpose is to regulate *those organizations which do.* Nowhere in the HMO Act do we find a provision that an HMO must provide dental services. It seems anomalous then that an organization which provides dental services must also offer medical and hospital services in order to operate.

It is our opinion that the Legislature did not intend that profit organizations offering only dental services on a prepaid, or retainer, basis should be regulated under the HMO Act, nor that by such Act, it intended to prohibit such organizations from transacting business. In so holding we express no opinion as to whether regulation of plaintiff's business is required under provisions of the Code other than those relating to insurers and HMOs.

Reversed. No costs awarded.

CROCKETT, C. J., and MAUGHAN, HALL and STEWART, JJ., concur.