408 P.2d 190

UTAH FUNERAL DIRECTORS & EMBALMERS ASSOCIATION, a Utah corporation, on behalf of its members, and Union Mortuary Company, a Utah corporation on behalf of its members and on behalf of others similarly situated, Plaintiffs and Appellants,

v.

MEMORIAL GARDENS OF THE VALLEY, INC., a Utah corporation, Memorial Trusts, Inc., a Utah corporation, Lake Hills, a Utah corporation, Aultorest Memorial Corporation, a Utah corporation, Hal S. Bennett, Donald Hacking and Raymond W. Gee, members of the Business Regulation Commission of the State of Utah, and Virgil L. Norton, Commissioner of Insurance of the State of Utah, Defendants and Respondents.

No. 10236.

Supreme Court of Utah.

Nov. 26, 1965.

---

C. N. Ottosen, Pugsley, Hayes, Rampton & Watkiss, Salt Lake City, for appellant.

Skeen, Worsley, Snow & Christensen, Backman, Backman & Clark, Salt Lake City, Richards, Alsup & Richards, Ogden, Lamoreaux & Gibson, Charles Welch, Jr., Phil L. Hansen, Atty. Gen., H. Wright Volker, Spec. Asst. Atty. Gen., Salt Lake City, for respondent.

WADE, Justice:

Plaintiff and Appellant brought this action for a declaratory judgment on the right to solicit the business of burial and funeral services for dead human bodies. They claim such solicitation violates professional and ethical standards. The trial court entered judgment against the plaintiffs and in favor of the defendants, and the plaintiffs appeal, claiming the following errors were committed by the court when it failed to hold:

1) That any funeral director or embalmer who performs funeral services pursuant to a pre-need contract obtained by solicitation by either of the defendants, or which is solicited or sold by or for either of such defendants, or which results to the benefit of a funeral director or embalmer who performs the funeral services or furnishes the funeral facilities is guilty of unprofessional and unethical conduct as defined in Sections 58–9–10 and 58–9–22, U.C.A.1953.

2) That the contracts sold by the defendants are all subject to the pre-need law of the State and the contract used and issued by the defendant, Memorial Trusts, Inc., is particularly in violation of the pre-need law as contained in Section 22–4–4 as amended. Such contract permits said defendant to demand and receive the earnings of the trust funds and pay said funds to said defendant contrary to the provision of said Section 22–4–4, U.C.A.1953, as amended.

3) That the pre-need contract being sold by the defendant companies are insurance contracts and subject to the insurance laws of this State, and the regulations of the State Insurance Department, and that the defendant companies issuing said contracts are also subject to the insurance laws and the regulations of the State Insurance Department.

4) That the portions of Section 22–4–1, 2, 4, 5 and 7, U.C.A.1953, of the pre-need law of the State as amended are not unconstitutional, as claimed by defendants.

We will discuss these propositions in the order above stated.

1) Plaintiff contends Section 58–9–10 and 58–9–22, U.C.A.1953 creates valid and correct provisions, standards and rules of what constitutes "unprofessional conduct" as related to embalmers and funeral directors. Such statutes contain the following provisions:

58–9–10: The words "unprofessional conduct" as relating to embalming are hereby defined to include: * * * .

(7) Solicitation of dead human bodies by a registered apprentice or licensed embalmer, or their agents, assistants or employees, whether such solicitation occurs before or after death; provided, this provision shall not be deemed to prevent or prohibit general advertising.

(8) Employment, directly or indirectly, of any apprentice, agent, assistant, embalmer, employee or other person, on part or full time, or on commission, for the purpose of calling upon individuals or institutions by whose influence dead human bodies may be turned over to a particular mortuary establishment, funeral director or embalmer; provided this provision shall not be deemed to prevent and prohibit

the solicitation for sale of crypts, burial lots or cremation services by a licensee or his employee.

(9) The buying of business by the licensee, his agents, assistants or employees, or the direct or indirect payment or offer of payment of a commission by the licensee, his agents, assistants or employees for the purpose of securing business; or the direct or indirect giving or offering to give any bonus, or gift for the purpose of securing business.

58–9–22: The words "unprofessional conduct" as they relate to this act, are hereby defined to include:

* * * * * *

(c) Solicitation of funeral business by the licensee, his agents, assistants or employees, whether such solicitation occurs before or after death * * *

(d) Employment by the licensee of persons known as "capers" [cappers] or "steerers" or "solicitors" or other such persons to obtain funeral directing or embalming business.

(e) Employment, directly or indirectly, of any apprentice, agent, assistant, embalmer, employee or other person, on part or full time, or on commission, for the purpose of calling upon individuals or institutions by whose influence dead bodies may be turned over to a particular funeral director * * *

(f) The buying of business by the licensee, his agents, assistants or employees, or the direct or indirect payment or offer of payment of a commission, bonus or gift by the licensee, his agents, assistants or employees for the purpose of securing business.

█ The above quotation from the statute requires solicitation for embalmers or funeral services for dead human bodies by a registered apprentice or a licensed embalmer or their agents, or the employment by such an apprentice or embalmer or agent to call on individuals or institutions to obtain dead human bodies for embalming or funeral services by a particular mortuary. We find no showing that such are the facts here. Both defendants, Memorial Trusts and Memorial Gardens of the Valley, clearly show that they are not funeral directors, but are selling contracts to furnish embalming and funeral services by a mortuary to be selected by the purchaser in such contract during his lifetime or by his heirs after his death at a specified price agreed upon in the contract regardless of future price increases.

Obviously, the solicitation of such a contract by these defendants does not violate the requirements of the provision of Section 58–9–10 or 58–9–22, U.C.A.1953. For here these defendants are not registered apprentices or licensed embalmers as prohibited by the statute, nor do they solicit dead human bodies to be turned over to a particular mortuary establishment, funeral director or embalmer, as prohibited by the statute. And, under the statute one or the other of these requirements is necessary in order for the solicitor to come under the definition of unprofessional conduct as defined in the statute above quoted.

2) Plaintiff argues that defendant Memorial Trusts violates Sections 22–4–1, 2, and 4, U.C.A.1953 by the provisions of the agreement. Such agreement authorized Memorial Trusts, as the agent of the purchaser, in consideration of its agreement to guarantee future funeral services and facilities regardless of price increases, to demand and receive the earnings of the trust funds for its own use.

Section 22–4–1 provides that any payment made on a contract for furnishing funeral services "shall be held to be trust funds, and the person * * * receiving said payments is hereby declared to be a trustee thereof." Section 22–4–2 provides that all such trust funds shall be deposited with a bank or trust company with all the rights to invest and use such funds usually exercised with trust deposits. Section 22–4–4 provides that "[A]ll payments and amounts so deposited, with all earnings and interest thereon, shall not be withdrawn until the death of" a beneficiary, but that "said funds plus all interest and earnings shall be released to the payor originally paying said funds under the purchase agreement, and said payor shall be entitled to receive the

same or any part thereof, at any time prior to the death of any beneficiary, upon demand upon said bank or trust company, and upon surrender of any pass book evidencing same."

Some of the provisions of these statutes definitely indicate the intention was to keep the funds in trust available for, and to make sure that the embalming and funeral services contracted for by the payor-purchaser could be supplied by the payee, to the full extent of the trust funds and earnings when the death occurs. The statute expressly forbids the withdrawal of any payment so deposited or any of the earnings thereof until the death of the beneficiary. The next sentence then provides that said funds plus all interest and earnings shall be released to the payor. Then the statute adds, "said payor shall be entitled to receive the same or any part thereof, at any time prior to the death of any beneficiary, upon demand upon said bank or trust company, and upon surrender of any pass book evidencing same."

If the payor draws out the entire amount of the funds and earnings he may thereby terminate the entire contract and relieve the payee from the obligation to furnish the embalming and funeral services. If he draws out only a portion of the funds the termination of the contract is not nearly so clearly suggested. The trustee would normally have in its possession and control the passbook. There is nothing in the statute which provides that the payee must against its will surrender to the payor the passbook in order to allow the payor to withdraw the funds, which would materially affect the ability of the trustee to fulfill his part of the contract to furnish funeral services or embalming upon the death of the beneficiary.

■■ One of the main purposes of the pre-need laws is to make sure that after the solicitations of such contracts the embalming and funeral services will be furnished as contracted to the extent that the trust funds and earnings can accomplish this. Certainly the trustee could not be allowed to withdraw a portion of such funds for its permanent use without replacement. That would clearly violate the spirit, purpose and provisions of these statutes which are obviously made for the protection of the payor-purchaser in obtaining the funeral services contracted for. We therefore conclude that insofar as the contract permits the trustee to withdraw trust funds for its own use, it is in violation of Sections 22–4–1, 2 and 4, U.C.A.1953 which provides that such funds shall be held in trust and shall not be withdrawn until the death of a beneficiary; and insofar as it is in violation of such statutes, that portion of the contract is a nullity.

3) Plaintiffs contend that the defendants, Memorial Gardens of the Valley, Inc., Memorial Trust, Inc., Lake Hills and Altorest Memorial Corporation are all selling insur-

ance contracts. They claim that such contracts are pre-need contracts for funeral or embalming services requiring the payments and earnings to be held as a trust fund to guarantee that the funeral and embalming benefits contracted for will be furnished regardless of the future price increases. They urge that such contracts should require approval in accordance with the state laws, and the seller should be required to obtain a license to operate an insurance company. A long line of cases on both sides are cited.[1] Possibly a majority of these cases hold that these are insurance contracts.

Here we have facts which clearly indicate that the legislature did not intend the defendants' operation operating under these pre-need statutes should be required to also qualify under the insurance laws of this state. Thus Section 22–4–6, U.C.A.1953 provides that this "act shall not apply to or affect the operations and business of duly licensed associations or companies under the insurance laws of the state of Utah." It is inconceivable that the legislature would enact a statute dealing with pre-arranged funeral plans containing the above provisions and still consider such plan as an insurance contract.

Also, Mr. Justice Crockett in a concurring opinion in In re Clark's Estate[2] in 1960 concluded that the payment by an insurance company of an accumulated fund to the widow of a former employee under an annuity contract is a "part of his estate" and not life insurance. Therein he stated:

Correlated to the proposition just stated is the important and controlling fact that the financing institution, Equitable, insured no risk of loss in the event of Mr. Clark's death. It was obliged to pay nothing except to refund the payments he had made toward the annuity, plus interest thereon. * * *

An "annuity" is a provision for an income for a period of years or for life, with no indemnity feature; whereas, "insurance" is an agreement that, for a premium it receives, the insurer will pay to a beneficiary a stated sum upon the happening of a contingency such as death, or other loss. It involves risk on the part of the insurer

1. Oklahoma S. W. Burial Ass'n. of Ardmore v. State ex rel. Read, 135 Okl. 151, 274 P. 642, 63 A.L.R. 704, Anno. "What Constitutes Insurance," 63 A.L.R. 711 to 773; Meyer v. Building & Realty Service Co., 209 Ind. 125, 196 N.E. 250, 100 A.L.R. 1442, Annotation "What Constitutes Insurance" 1449 to 1460; State ex rel. Duffy v. Western Auto Supply Co., 134 Ohio St. 163, 16 N.E.2d 256, 119 A.L.R. 1236, Annotation "What Constitutes Insurance" 1241 to 1248; State ex rel. Smith v. Haveland, 223 Minn. 89, 25 N.W.2d 474, 174 A.L.R. 544, Annotation "Who May Question," pp. 550 to 565; State v. Memorial Gardens Development Corp., 143 W.Va. 182, 101 S.E.2d 425, 68 A.L.R.2d 1233, Annotation "Validity of Statute," 68 A.L.R.2d 1251 to 1255.

2. In re Clark's Estate, 10 Utah 2d 427, 354 P.2d 112.

**234**

to pay on the happening of the contingency and the spreading of the risk over the group who pay the premiums.

Prior to the Clark case Section 31-1-7, U.C.A.1953 defined insurance as "a contract whereby one undertakes to pay indemnity or pay a specified amount upon a determinable contingency."

The 1963 Legislature after the Clark case amended the definition contained in Section 31-1-7 to read "Insurance is a contract whereby one undertakes to indemnify another or pay or allow a specified or ascertainable amount or benefit upon determinable *risk* contingencies." (Emphasis ours.)

■ Obviously this amendment, by adding the word "risk" to the definition of insurance was intended to adopt and codify the conclusions reached in Mr. Justice Crockett's concurring opinion in the Clark Estate and definitely indicates that the legislature considered insurance contracts to involve spreading of a risk by a group and not merely repayment of a cumulative trust fund.

■ That insurance involves such risks and in some cases pays much greater benefits to the beneficiary than the amount of the premium paid is recognized everywhere. For instance, if an insured person dies shortly after payment of the first premium,

his beneficiaries will receive much more than he paid to the insurance company. On the other hand, the insured person may live to pay much greater premiums than the amount of money the insurance company will pay to his beneficiaries upon his death. The same is true of fire, accident and other insurance policies. Certainly these risks are one of the prominent features of insurance policies. The situation in that respect is entirely different under the pre-need contract we are dealing with. For here, the amount to be paid on the contract is fixed by its terms, and the payee-purchaser must complete the payments of the specified amounts before he is entitled to the funeral services or benefits contracted for. The only possible profit or benefits which could accrue to the purchasers under these contracts would be a possible raise in the price of such services specified after the contract was entered into. In view of these facts and circumstances, we conclude that these pre-need contracts which are being solicited are not insurance contracts and do not in that respect violate the insurance provisions of our statutes.

■ 4) We find no merit to defendants' claim that our pre-need laws, Sections 22-4-1, 2, 3, 4, 5 and 7, Chapter 39 of the 1955 Laws of Utah, as amended by Chapter 45 of the 1957 Laws of Utah are unconstitutional and so hold.[3]

3. Memorial Gardens Ass'n. Inc. v. Smith, 16 Ill.2d 116, 156 N.E.2d 587; Falkner v. Memorial Gardens Ass'n., Texas Civil Appeals, 298 S.W.2d 934.

Affirmed in part, reversed in part as indicated herein. No costs awarded.

McDONOUGH and CROCKETT, JJ., concur.

CALLISTER, Justice (concurring specially):

In regard to point one, the appellants, in essence, contend that since the unprofessional conduct statute prohibits a licensed embalmer or funeral director from engaging in direct solicitation, the activities of the respondents are merely a subterfuge whereby the appellants may enjoy the fruits of solicitation and avoid the statutory prohibition. Plaintiffs maintain that the statutory provisions are violated because the defendants are acting as agents, employees and representatives of a particular licensed funeral director. Basically, plaintiffs argue that the principal, the funeral director, although originally unidentified, when he later agrees to perform as provided in a pre-need contract, ratifies the contract previously procured by the corporate agent.

This argument is without merit and completely misapprehends the facts as presented. The mortuary is selected by the purchaser or his survivors, and it is the duty of the defendants, acting on behalf of the funeral purchaser, to present the contract for acceptance or rejection by the selected mortuary. It is difficult to comprehend how defendants, who are by statute designated as trustees with all the correlative obligations by virtue of this relationship, including the duty to act solely in the interest of the beneficiary, can be characterized as agents of the mortuaries.

In regard to point two, plaintiffs contend that a provision in defendants' contract, which revocably appoints them as agents of the purchaser with the right to demand and receive the earnings of the trust funds for their own use in exchange for their agreement to guarantee the services and facilities recited in the agreement, regardless of price increases, violates the statutory provisions of Chapter 4, Title 22, U.C.A.1953.

Any agreement which falls within the description of services recited in § 22–4–1, U.C.A.1953, must necessarily comply with all the provisions of Chapter 4, Title 22. Any payment of money is designated as trust funds, and any person so receiving them is a trustee. The chapter further prescribes certain duties that the trustee must undertake; these provisions are therefore incorporated into and control any prearranged funeral agreement.

Section 22–4–4, U.C.A.1953 provides in effect that the prearranged funeral plan is a revocable trust and that the payor is entitled to receive all or part of the said funds plus all interest and earnings upon his demand upon the bank and his surrender of any pass book evidencing the same.

In the instant case, seller has had the purchaser revocably appoint him as his agent to demand and receive the earnings of the trust fund. Seller's designation of himself as the purchaser's agent is in direct violation of § 22–4–1, which declares him to be a trustee. Seller cannot comply with the statutory provisions and at the same time act in a dual capacity as both a trustee and agent.[1] A seller, within the provisions of Chapter Four, remains at all times a trustee, and regardless of the power of the payor to demand and receive the trust funds, the seller cannot subvert the express provisions of the statutes by inserting a provision in the agreement appointing himself the purchaser's agent.

The seller, as a trustee, is under a duty to the beneficiary to administer the trust solely in the interest of the beneficiary. The trustee violates his duty to the beneficiary where he uses the trust property for his own purposes.[2]

However, there is nothing within the statutory scheme that prohibits the seller, as trustee, from receiving compensation for his administration of the trust agreement.[3] Although it is definitely within the police power of the legislature to regulate and control prearranged funeral agreements,[4] there would be grave constitutional implications if the statute were interpreted as prohibiting the seller, who is engaging in a lawful business, from receiving any compensation for his services. I conclude that it is not violative of the statute for the payor and trustee at the inception of their agreement to provide for compensation to the trustee for the administration of the trust. However, in accordance with the legislative intent to create a fiduciary relationship, the provision providing for compensation for the trustee's services should be clearly stipulated and understood and not be disguised under an agency relationship. The legislature has not elected to limit this compensation; so it is within the power of the parties to determine the amount.

HENRIOD, Chief Justice (Not participating):

---

1. See Restatement of the Law of Trusts 2d, § 8, for the distinctions in an agency and trust relationship.

2. See Restatement of the Law of Trusts 2d, § 170(1) and Comment 1. Also see §§ 169–185 for the duties of a trustee.

3. Restatement of the Law of Trusts 2d § 242, p. 605. "Except as stated in § 243, the trustee is entitled to compensation out of the trust estate for his services as trustee, unless it is otherwise provided by the terms of the trust or un-

less he agrees to forego or waives compensation. * * *
"Comment: f.
   If by the terms of the trust it is provided that the trustee shall receive a certain amount as compensation for his services as trustee, he is ordinarily entitled to that amount and, unless it is otherwise provided, he is ordinarily entitled only to that amount. * * * "

4. See Messerli v. Monarch Memory Gardens, Inc., (1964) Case Nos. 9447, 9448, 88 Idaho 88, 397 P.2d 34, 40, 41.

I have trouble with the main and concurring opinions' reasonings and logic and thus take a bye because neither is dead right in this case,—as the litigants respectively say *they* are.