The CEDAR MEMORIAL PARK CEMETERY ASSOCIATION, the Cedar Memorial Funeral Home Company, the Cedar Memorial Company, Appellants,

v.

PERSONNEL ASSOCIATES, INC., Irwin Smalheiser and Marion C. Lorenz, Defendants,

Iowa Funeral Directors and Embalmers Association, Inc., Appellee.

No. 53608.

Supreme Court of Iowa.

June 23, 1970.

Shuttleworth & Ingersoll, Cedar Rapids, for appellants.

Barnes, Wadsworth, Elderkin, Locher & Pirnie, Cedar Rapids, for appellee.

LeGRAND, Justice.

This is a de novo appeal challenging a decree permanently enjoining plaintiffs from selling pre-need funeral contracts contrary to sections 147.56(1) and 156.12, Code of Iowa, and holding plaintiffs violated the provisions of chapter 523A, Code of Iowa in establishing trusts for funds paid under such contracts.

There are three plaintiffs. The Cedar Memorial Park Cemetery Association is a corporation which deals exclusively in the sale of cemetery lots. The Cedar Memorial Company is a separate corporation dealing in the sale of grave markers and monuments, and the Cedar Memorial Funeral Home Company is a third corporation which renders complete funeral services. Although the issues here involve only the funeral home corporation, the trial court enjoined all three and no complaint is made of that portion of the decree. We refer here to The Cedar Memorial Funeral Home Company as the sole plaintiff.

Plaintiff started this action against Personnel Associates, Inc. and two individuals connected with that company. Later the Iowa Funeral Directors and Embalmers Association, Inc. intervened, asking that plaintiff be enjoined from selling pre-need funeral contracts through paid agents in violation of sections 147.56 (1) and 156.12 of the Code. The original action of plaintiffs against Personnel Associates, Inc. and its employees was subsequently dismissed, and this comes to us solely as a dispute between plaintiff and the intervenor.

Although the record is long and clearly reflects considerable bitterness between the litigants, the ultimate result depends on our interpretation of the pertinent parts of chapters 147, 156, and 523A, Code of Iowa. We refer to the applicable statutes in the appropriate places throughout this opinion.

The material facts are virtually undisputed. Plaintiff operates a funeral home in Cedar Rapids and, until enjoined from doing so, employed agents to solicit and sell pre-need funeral contracts. A pre-need funeral contract is simply an agreement made by one during his lifetime by which he arranges for disposition of his body after death.

The agents employed by plaintiff to solicit these contracts were given a sales course in which they were taught, among other things, the most effective approach and the most successful technique for this type of selling. They were paid a commission for all sales made.

The intervenor is a state organization whose membership consists of approximately 75 percent of all licensed funeral directors and embalmers in Iowa. Needless to say, plaintiff is not one of them.

The intervenor claims that plaintiff's activities violate the terms of section 147.56 (1) which provides in material part as follows:

"For the purposes of section 147.55 [providing the grounds upon which a license of a funeral director and embalmer may be revoked] 'unprofessional conduct' shall consist of any one of the following acts:

"1. Solicitation of professional patronage by agents or persons popularly known as 'cappers' or 'steerers', or profiting by the acts of those representing themselves to be agents of the licensee. * * *"

The issue is squarely joined since plaintiff readily admits it hires agents to solicit

business, pays them a commission, and profits by their acts in selling pre-need funeral contracts. We believe it fair to say the statutory reference to cappers and steerers—terms importing sinister motive—has no application. Black's Law Dictionary, Revised Fourth Ed., defines "capper" as a "decoy or lure for purpose of swindling" and "steerer" as "one who gains the confidence of the person intended to be fleeced and who may be said to steer or lead a victim to the place where the latter is to be robbed or swindled." See also Barron v. Board of Dental Examiners of California, 109 Cal.App. 382, 293 P. 144, 145.

Our statute not only prohibits solicitation by such evil persons but also generally forbids that activity by agents. Our discussion treats these pre-need contracts as having been procured for plaintiff by its agents.

Plaintiff relies on the following propositions for reversal:

(1) That chapter 147, particularly section 147.55, does not apply because it regulates only certain professions while the occupation of funeral director and embalmer is a business, not a profession;

(2) Even if it should be held that chapter 147 applies to plaintiff, the regulations sought to be imposed by chapter 156 are not a proper exercise of police power and are not enforceable because they are arbitrary, discriminatory, and bear no reasonable relationship to public health, morals, or the general welfare;

(3) Chapter 156, Code of Iowa, insofar as it attempts to prohibit the solicitation of pre-need contracts by funeral directors while permitting such solicitation by others is unconstitutional because it denies plaintiff equal protection of the law under Amendment 14 to the Constitution of the United States, and section 6, Article I, of the Constitution of Iowa;

(4) The evidence does not show plaintiff violated the provisions of chapter 523A, Code of Iowa, in establishing trusts for purchasers of pre-need contracts; and

(5) The intervenor is not entitled to relief in any event because it does not come into court with clean hands.

I. We cannot agree with plaintiff's argument that chapter 147 has no application because it purports only to regulate the conduct of certain *professions* while plaintiff is engaged in a *business*—funeral directing and embalming.

It is quite true that many courts, including our own, have held the occupation of funeral director and embalmer to be a business and have declined to classify it as one of the professions under certain circumstances. State v. Winneshiek Co-Operative Burial Association, 237 Iowa 556, 563, 22 N.W.2d 800, 802; Grissom v. Van Orsdel, Fla.App., 137 So.2d 246, 247; Trinka Services, Inc. v. State Board of Mortuary Science, 40 N.J.Super. 238, 122 A.2d 668, 669. None of these cases, however, was decided under facts similar to those existing here and are not helpful to plaintiff.

Plaintiff's argument that funeral directing and embalming cannot be considered a profession for the regulatory purposes of chapter 147, Code, must fail in view of the definition contained in section 147.1 as follows:

"For the purpose of this and the following chapters of this title [Title VIII, which embraces chapters 146 through 158 and deals with 'the practice of certain professions affecting public health']: * * * (3) 'Profession' shall mean * * * funeral directing or embalming."

We have frequently held the legislature is its own lexicographer. Its definitions are binding on us. S & M Finance Company, Fort Dodge, v. Iowa State Tax Commission, Iowa, 162 N.W.2d 505, 507; Inter-state Nurseries, Inc. v. Iowa Department of Revenue, Iowa, 164 N.W.2d 858, 861.

■ We find no merit in plaintiff's argument that it is not subject to the provisions of chapter 147, particularly 147.55.

■ II. Plaintiff's next proposition asserts that the regulatory sections of chapters 147 and 156 cannot apply to it at all because they are limited to those *licensed* to engage in certain occupations. Since a corporation is not eligible for licensing, plaintiff argues, it is therefore not subject to the restrictions imposed on those who are.

Section 147.2 provides in part:

"No person shall engage in the practice of * * * funeral directing or embalming as defined in the following chapters of this title, unless he shall have obtained from the state department of health a license for that purpose."

Section 156.1 in pertinent part provides:

"2. A 'funeral director' is a person engaged in or conducting, or holding himself out, in whole or in part, as being engaged in:

"a. Preparing [for] * * * or directing and supervising the burial or disposal of dead human bodies.

"b. Furnishing * * * any funeral services, or embalming, * * *.

"c. Who shall, in connection with his name or funeral establishment use the words 'funeral director', 'mortician' or any other title implying that he is engaged as a funeral director as defined in this subsection.

"3. An 'embalmer' is a person engaged in, or holding himself out as engaged in, the practice of disinfecting or preserving dead human bodies, * * *.

"Nothing contained in this chapter shall be construed as prohibiting the operation of any funeral home or funeral establishment by any person, fiduciary, firm, co-operative burial association or corporation; provided that each such person, firm, co-operative burial association or corporation shall at all times employ an embalmer and funeral director licensed under the provisions of this chapter, and shall keep the state department of health advised of the name of the licensee or licensees so employed."

Plaintiff at all times employed a licensed funeral director and a licensed embalmer. Plaintiff wants us to hold that such individuals are subject to the statutory restrictions but that it is not, even though it is permitted to engage in this activity solely by reason of a statutory exception granted by section 156.1.

Plaintiff's argument is both simple and plausible; however, we reject it as being entirely inconsistent with and repugnant to the obvious purpose of our law regulating those who engage in the burial or other disposition of dead human bodies.

It is clear that the legislature intended to regulate the disposition of dead human bodies *by anyone*. If we were to adopt plaintiff's thesis, this statutory purpose could be circumvented by the simple expedient of incorporating. The trial court refused to accept this rationale and so do we. Such an interpretation would run counter to the obvious objects and purposes of the chapter. Similar reasoning was rejected in Seifert v. Buhl Optical Co., 276 Mich. 692, 268 N.W. 784, 786. See also discussion in State v. Fremont Co-operative Burial Association, 222 Iowa 949, 952, 270 N.W. 320, 322, as to the effect of unlicensed corporation acting through licensed employees. As added evidence of legislative intent, we point out that section 156.12 specifically refers to corporations as being among those who are subject to the provisions of this chapter.

■ In interpreting statutes we are obliged to seek out the intention of the legislature and to avoid placing upon statutory language a strained, impractical or absurd construction. Janson v. Fulton, Iowa, 162 N.W.2d 438, 442, 443; State v. Robinson, Iowa, 165 N.W.2d 802, 805.

The language of chapter 156 is clear that any person—individual or corporate—engaged in disposing of dead human bodies shall be bound by the regulatory provisions of the law relating thereto. To hold otherwise would lead to the absurd consequences which courts are cautioned to avoid in statutory interpretation. We reject this proposition as being without merit.

III. This brings us to plaintiff's most vigorous complaint: that the prohibition against solicitation by agents is not a proper exercise of police power; that it is arbitrary and discriminatory; and that it bears no reasonable relationship to the public health, morals or welfare.

It is well settled—and plaintiff concedes—the general field here under discussion is a proper one for regulation under the state's police power. 38 Am.Jur.2d, Funeral Directors and Embalmers, section 3, page 75; 54 Am.Jur., Undertakers and Embalmers, section 3, page 508; 89 A.L.R.2d 1338, 1342 (section 4), and cases there cited.

In other words plaintiff does not challenge the *right* to regulate but objects to the *manner* in which it was done.

Plaintiff's objection focuses on section 147.56(1), heretofore set out, which prohibits generally the solicitation of "professional patronage" by agents, and section 156.12, which contains a similar (but not identical) provision relating specifically to funeral directors and embalmers. Plaintiff claims such restrictions are unreasonable interferences with a lawful business and represent an improper and arbitrary exercise of police power.

Statutes similar to ours have been upheld against such attacks in other jurisdictions. In Drummey v. State Board of Funeral Directors and Embalmers, 13 Cal.2d 75, 87 P.2d 848, 850, 851, the court met a like complaint with this language: "We find nothing arbitrary or discriminatory in these provisions [against solicitation] * * *.

This provision appears to be a reasonable regulation bearing a definite relation to the public welfare."

In Louisiana Undertaking Company v. Louisiana State Board of Embalmers, La. App., 58 So.2d 303, the court held a regulation fixing the conditions under which business could be solicited was a valid exercise of police power.

In Prata Undertaking Company v. State Board, 55 R.I. 454, 182 A. 808, 816, it was claimed, as it is here, that a rule prohibiting a funeral director or embalmer from paying for business brought to him by another was arbitrary and unreasonable. The court disagreed, saying:

"The appellants contend that this section is unreasonable in its scope and imposes restrictions upon the conduct of their business which violate their constitutional rights preserved in section 1 of article 14 of the Amendments to the Constitution of the United States.

"The business we have under consideration, from its very nature, leads to a confidential and intimate relationship between the funeral director and those dealing with him, usually at a time when emotions are strong. Unnecessary commercialization of a death, therefore, should be avoided. * * * Having in mind that the primary purpose of the act in question is the preservation of the morals, comfort and general welfare of the public, it may well be that the legislature believed that business of the type before us should not be secured by the payment of money or other valuable consideration. The determination of this issue, in our judgment, properly falls within the domain of legislative discretion or policy."

Quesenberry v. Estep, 142 W.Va. 426, 95 S.E.2d 832, 846, is another case upholding the right to regulate the manner in which funeral directors and embalmers are permitted to solicit business.

It is quite true, as plaintiff points out, these cases deal with solicitation after death or while death is impending. However, police power is not so circumscribed that any other method of control is thereby rendered arbitrary.

 In the exercise of its police power, the legislature not only has wide discretion in determining what conditions should be remedied but also in deciding what course is best to accomplish that purpose. The decision that *all* solicitation by agents should be banned is well within proper legislative policy. Memorial Gardens Ass'n, Inc. v. Smith, 16 Ill.2d 116, 156 N.E.2d 587, 594; City of Des Moines v. Manhattan Oil Co., 193 Iowa 1096, 1103, 1104, 184 N.W. 823, 826, 827, 188 N.W. 921, 23 A.L.R. 1322; Benschoter v. Hakes, 232 Iowa 1354, 1361, 8 N.W.2d 481, 485, 486. See also discussion in Quesenberry v. Estep, supra, 95 S.E.2d 832, 837–841.

We find no merit in plaintiff's complaint under this Division.

IV. Plaintiff next asserts our statutes prohibit a funeral director or embalmer from soliciting business but does not similarly inhibit other persons. This, it is argued, is a denial of equal protection under both the Federal and Iowa Constitutions.

Plaintiff refers specifically to sections 156.9(4) and section 156.12. Section 156.9 (4) provides:

"For the purpose of revoking a license under the provisions of 147.55, 'unprofessional conduct' on the part of a funeral director or embalmer shall in addition to the provisions of said section consist of any one of the following acts:

\* \* \* \* \* \*

"4. If the licensee shall engage generally in the business of selling or issuing burial contracts or burial certificates in anticipation of the death of a person, or if he shall enter into any contract with another whereby he agrees or undertakes to furnish funeral supplies or funeral service to persons who have been solicited by such other or who have agreed with such other to purchase the same; provided this subsection shall not apply to contracts \* \* \* made in conjunction with the sale of any life insurance policy issued by a life insurance company licensed to transact business in Iowa."

Section 156.12 provides:

"Every funeral director or embalmer, or any person acting for him, *who pays or causes to be paid, directly or indirectly, any money or other thing of value as a commission or gratuity for the securing of business for such funeral director or embalmer,* and every person who accepts or offers to accept any money or other thing of value as a commission or gratuity from a funeral director or embalmer in order to secure business for him shall be deemed guilty of a misdemeanor, \* \* \*, provided that nothing herein contained shall be construed as prohibiting any person, firm, co-operative burial association or corporation, subject to the provisions of this chapter, from using legitimate and honest advertising." (Emphasis added.)

Plaintiff's argument is that since section 156.9(4) permits the sale of pre-need contracts made in connection with the sale of life insurance by some, it must extend that right to all; otherwise equal protection of the laws has been denied. But, plaintiff contends, section 156.12 expressly forbids what section 156.9(4) impliedly permits. Plaintiff claims repugnancy between the two and insists any pre-need sales by it are permitted under section 156.9(4) since all were made in connection with the issuance of life insurance policies.

Conceding the premise that plaintiff's contracts were accompanied by life insurance sales, we must disagree with the conclusion they are therefore authorized under section 156.9(4) rather than forbidden by section 156.12. We find the two sections entirely reconcilable.

Plaintiff completely ignores a vital distinction between them—*payment for securing business.* This element is indispensable under section 156.12, but not under section 156.9(4).

Chapter 156 in its present form was enacted by the Fifty-fifth General Assembly in 1953. It is before us for the first time. In construing a statute under such circumstances we seek out the legislative intent both from the language used and the purpose for which the legislation was enacted. We have held it is not permissible to rest our interpretation of a legislative act on any one part or to give undue effect thereto. The ultimate object is to discover the real purpose and meaning of the act as a whole. To best accomplish this we must consider all parts of the enactment together. Dingman v. City of Council Bluffs, 249 Iowa 1121, 1126, 90 N.W.2d 742, 746; Ritter v. Dagel, 261 Iowa 870, 875, 156 N.W.2d 318, 321; Wilson v. Iowa City, Iowa, 165 N.W.2d 813, 822.

When we apply these rules to this chapter, we are satisfied the legislature intended to forbid a funeral director or embalmer from paying anything of value "for the securing of business" *in all cases without exception.* Section 156.9(4) must be construed in the light of this prohibition. It permits the sale of pre-need contracts under the conditions there stated, *but not in violation of section 156.12.*

We believe this result clearly expresses the legislative will and accomplishes the evident objects and purposes of the act.

What we have said presages our conclusion that the act does not violate the equal protection rights afforded by Amendment 14, Constitution of the United States, and section 6, Article I, Constitution of Iowa.

Those constitutional provisions are satisfied if all persons within a reasonable classification are treated alike. It is generally held the legislature has wide discre-

tion in deciding what those classifications should be. Lee Enterprises, Inc. v. Iowa State Tax Commission, Iowa, 162 N.W.2d 730, 753; Graham v. Worthington, 259 Iowa 845, 864, 146 N.W.2d 626, 638.

Section 156.12 defines a misdemeanor which may be committed by any funeral director or embalmer. Its purpose is to prescribe rules of conduct which *all* members of that group must observe. Section 156.9(4) relates to different circumstances.

We hold there is no violation of plaintiff's constitutional rights here.

V. Plaintiff also finds fault with that part of the trial court's decree holding it had violated the provisions of chapter 523A, Code of Iowa.

Chapter 523A, enacted by the Fifty-fifth General Assembly in 1953, describes how money paid under pre-need contracts must be handled by the recipient. Section 523A.1 provides in part:

"Whenever an agreement is made by any person, firm or corporation for the final disposition of a dead human body wherein delivery of personal property to be used under a pre-arranged funeral plan or the furnishing of professional services of a funeral director or embalmer in connection therewith, is not immediately required, *eighty percent of all payments made under the agreement, including interest thereon, shall be and remain trust funds* until occurrence of the death of the person for whose benefit the funds were paid. * * *" (Emphasis supplied.)

Section 523A.2 provides:

"All such trust funds shall be deposited in a bank or trust company authorized to transact business in this state within thirty days after the receipt thereof and shall be held in a separate account or in one common trust fund under a trust agreement *in the name of the depositor in trust for the designated beneficiary* until said trust fund is released under either of the conditions

provided in section 523A.1." (Emphasis supplied.)

Section 523A.4 makes violation of either of the preceding sections a misdemeanor.

At the time of trial plaintiff had sold 1027 pre-need contracts and 80 percent of the amount paid by the purchasers had been deposited in The Merchants National Bank of Cedar Rapids under a trust agreement between the bank and plaintiff. The amount deposited was $289,781.40. In that agreement plaintiff is designated as trustor and the bank as trustee.

The agreement includes the direction that "said funds when so delivered shall be invested and reinvested by the trustee in said trustee's best judgment and discretion."

Intervenor claims this arrangement violates the provisions of chapter 523A in two respects: First, there is no authority for the investment of these funds, which the statute requires shall remain at interest; and, second, the investments made were for the benefit and profit of plaintiff, which defeats the purpose and object of chapter 523A to protect the purchaser of pre-need funeral contracts.

■ We should first discuss the relationship between plaintiff and the contract purchasers under chapter 523A. Some states having similar statutes specifically provide that the person to whom payment is made under a pre-need contract is the trustee of the fund, and the person making the payment is the beneficiary. Utah Funeral Directors and Embalmers Association v. Memorial Gardens of the Valley, Inc., 17 Utah 2d 227, 408 P.2d 190, 193; Memorial Gardens Association, Inc. v. Smith, 16 Ill.2d 116, 156 N.E.2d 587, 590. Others make the depository bank the trustee. Messerli v. Monarch Memory Gardens, Inc., 88 Idaho 88, 397 P.2d 34, 38. Our statute does not name either party specifically as a trustee, but we believe a fair reading of the entire chapter leads to the inevitable conclusion the legislature intended the contract seller—in this case the plaintiff—to have that responsibility.

We point out the trial court found as part of its decree as follows:

"The plaintiff in the sale of pre-need funeral plans is obligated to act as trustee and has a duty to the beneficiary to administer the trust in the best interest of the beneficiary * * *."

■ No objection was made to that part of the decree. In any event we believe it to be correct. For our purposes, however, this would make little difference. Regardless of the trustee's identity, it is indisputable that all statutes such as chapter 523A are enacted for the protection of those individuals purchasing pre-need funeral contracts. This is their underlying philosophy, and they should be interpreted with that uppermost in mind.

This is evident from those cases which have already considered this question.

In Memorial Gardens Association, Inc. v. Smith, supra, 156 N.E.2d 587, 593, the court said, "The trust fund provisions * * * are designed * * * to assure the purchasers that the company will be able to complete their contracts when the time for performance arrives. When we consider that contract payments are to be made in a maximum of three years and that the average time until performance of the 'pre-need' contracts is almost 29 years, [the average life expectancy of the purchasers] the justice of the legislation becomes evident."

In Messerli v. Monarch Memory Gardens, Inc., supra, 397 P.2d 34, 42, the Idaho Supreme Court said, "We think unquestionably the legislature, by the enacting of this statute, [requiring money paid to be deposited in trust funds] had in mind the protection of the public and the prevention of fraud."

Utah Funeral Directors and Embalmers Association v. Memorial Gardens of the

Valley, Inc., supra, 408 P.2d 190, 193, 194, had this to say:

"Some of the provisions of these statutes definitely indicate the intention was to keep the funds in trust available for, and to make sure that the embalming and funeral services contracted for by the payor-purchaser could be supplied by the payee, to the full extent of the trust funds and earnings when death occurs. * * * One of the main purposes of the pre-need laws is to make sure that * * * the embalming and funeral services will be furnished as contracted to the extent that the trust funds and earnings can accomplish this."

As already noted the plaintiff deposited 80 percent of the funds collected in The Merchants National Bank under an agreement which designated the bank as the trustee. Robert F. Ledwith, a trust officer of the bank, testified he was in charge of this trust account since its inception. He stated the funds were kept invested primarily in securities and a periodical report of earnings was made to plaintiff. He expressed his opinion that plaintiff would realize any appreciation from these investments. This testimony was neither corrected nor disputed. He further testified disbursements from this fund were made as requisitioned by plaintiff. No payments were ever made to any other person or at any other person's request. The witness conceded that, if the investments depreciated sufficiently, there would be insufficient money in the trust to pay out in full the principal amounts paid on the pre-need contracts.

■ We agree with the trial court that the manner in which these funds were treated violated the provisions of chapter 523A. We find no authority in that chapter permitting investment of these funds. Section 523A.1 provides that all payments made under such pre-need contracts, *including interest thereon,* shall be and remain trust funds. Section 523A.2 specifies that such funds shall be held in trust for the designated beneficiary *until said trust fund is released* under either of the conditions provided in section 523A.1.

■ It is notable that the statute makes no reference to investment but says the funds shall remain on deposit. It makes no reference to "increment" but mentions only "interest." Furthermore the very purpose of the act belies the idea of permitting the usual and ordinary investment of such funds. Clearly the legislature intended to maintain the principal amount paid on such contracts intact for its eventual use as a funeral fund and did not contemplate any use of the fund for investment purposes in the meantime.

Plaintiff attempts to justify the investments by saying they were made under the prudent man rule. (Section 633.123, Code of Iowa.) We need not consider the type of investment made since we hold the statute creating the trust permitted *no* investment.

In view of what we have already said in this division, it would perhaps be unnecessary to discuss the further point raised in connection with chapter 523A, but we feel it important to state our view on the impropriety of plaintiff's conduct in securing personal profit from funds paid on pre-need contracts. We find this entirely inimical to the purposes of the law. Under similar statutes other courts have reached this same conclusion. Utah Funeral Directors and Embalmers Association v. Memorial Gardens of the Valley, Inc., supra, 408 P.2d at page 194; Memorial Gardens Association, Inc. v. Smith, supra, 156 N.E.2d at page 592; Messerli v. Monarch Memory Gardens, Inc., supra, 397 P.2d at page 40.

Perhaps no rule is more firmly established than that which prohibits a trustee from obtaining any personal benefit, advantage, gain or profit from the trust or the trust property. Bogert, Trusts and Trustees, Second Ed., section 543(q), page 571; Restatement of Trusts 2d, section 170, page 364; 90 C.J.S. Trusts § 248(b) (c), pages 253–266. Yet under the form of

pre-need contract used by plaintiff there is no way the purchaser upon cancellation or his personal representative at his death can receive anything beyond the value of the principal payments on the contract. All benefit from the use of this money—trust money—accrues to plaintiff. We cannot believe this was the intent of chapter 523A. 54 Am.Jur., Trusts, section 314, page 249; Van Gorp v. Van Gorp, 229 Iowa 1257, 1261, 296 N.W. 354, 356, and citations.

■ We now hold that one who enters into a contract to furnish property or services in the future as provided in chapter 523A is a trustee for 80 percent of all payments made thereunder; that such payments must be deposited as provided in section 523A.2 and, together with interest, must remain on deposit until released as provided in section 523A.1; and that such funds may either be deposited in a separate trust account for each contract purchaser or held in one common trust fund which shows the interest of each beneficiary therein.

Objections were raised at the trial to certain claimed violations of section 523A.3 of the Code. This section has since been repealed by chapter 273, Acts of the Sixty-third General Assembly (1969). We disregard any issues raised under that repealed section as we consider them unimportant to our conclusions here.

VI. The remaining issue deals with plaintiff's assertion that the intervenor should in no event be given relief because it does not come into court with clean hands. That defense is not available to plaintiff under these circumstances. For the sake of argument we may concede plaintiff's claim that intervenor is here for its own selfish purposes. The record and the briefs abound in charges and counter-charges concerning the relative business ethics and practices of the contesting parties. We have purposely avoided discussion of these matters, preferring to rest our decision where it belongs—on proof of violation of statutory provisions.

■ In 22 Am.Jur.2d, Equity, section 136, page 667, the "clean hands" doctrine is stated as follows:

"The maxim and principle for which it stands signifies that a litigant may be denied relief by a court of equity on the ground that his conduct has been inequitable, unfair and dishonest, or fraudulent and deceitful as to the controversy in issue."

The maxim is not one to be applied rigorously and should be used only to promote public policy and protect the integrity of the courts. 27 Am.Jur.2d, Equity, section 136, page 669. It is not a favored doctrine of the courts and should not be invoked when the only loser would be the public. Butler v. Butler, 253 Iowa 1084, 1125, 114 N.W.2d 595, 619. It is applied, not as a favor to a litigant, but in the interest of the public. Bell & Howell Company v. Bliss, 7 Cir., 262 F. 131, 135; Sisson v. Janssen, 244 Iowa 123, 130, 131, 56 N.W.2d 30. It has been held the application of the doctrine is purely discretionary and that it should not be applied where the result would be contrary to public policy. Staedler v. Staedler, 6 N.J. 380, 78 A.2d 896, 28 A.L.R. 2d 1291. See also 30 C.J.S. Equity § 99, page 1048, and 27 Am.Jur.2d, Equity, section 158, page 671.

■ We do not view the present controversy as affecting only the two litigants. The real party in interest is the public, whose rights the statutes in question seek to protect. If we were to apply the "clean hands" doctrine here, we would be tacitly approving practices which the legislature has declared are contrary to the public good. We decline to do so.

We have considered all matters raised and argued by plaintiff and find nothing to warrant reversal of the trial court's decree, which is therefore affirmed.

Affirmed.

All Justices concur, except REES and UHLENHOPP, JJ., who take no part.