STATE of Iowa, Appellee,

v.

David S. LUDVIGSON, Appellant.

No. 91–206.

Supreme Court of Iowa.

March 18, 1992.

**420**

John R. Sandre and Richard O. McConville of Scalise, Scism, Sandre, McConville, Miller, Holliday, Schwarz, Carr & Renzo, Des Moines, for appellant.

Bonnie J. Campbell, Atty. Gen., Thomas S. Tauber, Asst. Atty. Gen., and John P. Sarcone, County Atty., for appellee.

Considered by LARSON, P.J., and SCHULTZ, CARTER, NEUMAN, and SNELL, JJ.

NEUMAN, Justice.

This appeal involves a prosecution for second-degree theft by alleged misappropriation of prepaid funeral service trust funds. The defendant, David Ludvigson, received a suspended sentence for five violations of Iowa Code section 714.1(2) (1989). On appeal Ludvigson challenges the sufficiency of the evidence to convict him and an evidentiary ruling that he claims warrants reversal. We affirm.

A jury could have found the following facts. Ludvigson was hired in January 1988 as chief executive officer of Leopard Enterprises, a group of companies owning funeral homes and cemeteries in Des Moines, Ottumwa, and Fairfield, Iowa. Although Ludvigson had no previous experience in the funeral business, he was a well-educated man who had capped his career in education administration as assistant to the chancellor of the University of Wisconsin at Green Bay. He was also a licensed insurance agent and real estate broker.

Leopard Enterprises was actively engaged in the sale of "pre-need" funeral contracts. Under such contracts, customers pay a fixed sum for funeral services and merchandise guaranteed to be provided when needed in the future. Iowa Code chapter 523A governs the legal obligations of those engaged in the funeral business with respect to pre-need contracts.

Section 523A.1 pertains to the trust fund requirements that are at issue in this appeal. That section provides, in part, as follows:

> Whenever an agreement is made by any person, firm, or corporation to furnish, upon the future death of a person named or implied in the agreement, funeral services or funeral merchandise, *a minimum of eighty percent of all payments made under the agreement shall be and remain trust funds until occurrence of the death of the person for whose benefit the funds were paid,* unless the funds are sooner released to the person making the payment by mutual consent of the parties.

Iowa Code § 523A.1 (emphasis added). The law further requires that a seller of funeral services must deposit the requisite percentage of pre-need payments in an insured account within thirty days. Iowa Code § 523A.2(1)(a).

Shortly after Ludvigson took responsibility for the company's operations, cash flow problems developed. Ludvigson understood the statutory trust fund requirements and adhered to them faithfully for several months. In June 1988, however, Ludvigson and the owner of the company, Don Leopard, decided to begin using all of the pre-need contract payments to cover operational expenses rather than placing eighty percent in trust. The decision was reached, in part, upon Leopard's assertion that a proposed refinancing of the company would remedy the shortage in the trust account. But the refinancing never materialized.

From June until December, 1988, the company received $298,428.94 in pre-need contract payments. Although the company bookkeeper went through the motion of satisfying the eighty percent requirement by writing checks on the operating account for deposit into the trust account, the checks were never cashed. They were held

at company headquarters with Ludvigson's knowledge. Thus, there was no transfer of funds to the trust account. The company used the contract payments along with other revenues to pay salaries, commissions, and other routine business expenses.

Even with this infusion of cash, the company's deteriorating financial condition soon led it into bankruptcy and receivership. In connection with those civil proceedings, Ludvigson candidly admitted under oath that he intentionally disregarded the trust requirements of section 523A.1 in the interest of keeping the business going. In this way, he thought, the public's confidence in the business would remain secure. Had the trust requirements been fulfilled, the company's operating expenses could not have been met and services would have been denied. The record reveals that no prepaid customers were ever denied funeral services to which they were entitled.

Following an investigation by the consumer protection division of the attorney general's office, Ludvigson was charged with five counts of second-degree theft in violation of Iowa Code section 714.1(2). Under this statute, theft is committed when a person

> [m]isappropriates property which the person has in trust, or property of another which the person has in the person's possession or control, whether such possession or control is lawful or unlawful, by using or disposing of it in a manner which is inconsistent with or a denial of the trust or of the owner's rights in such property....

Iowa Code § 714.1(2). At trial the parties stipulated to evidence that pre-need funeral services and merchandise purchased by five customers in June and October 1988 each called for trust deposits in excess of $500. None of these funds was placed in trust.

The theft of property exceeding $500 in value but not exceeding $5000 is a class "D" felony. Iowa Code § 714.2(2). The jury found Ludvigson guilty on all five counts. It is from the judgment and sentence entered upon these jury verdicts that Ludvigson now appeals.

I. *Sufficiency of the evidence.* Before the trial court, and now on appeal, Ludvigson challenges the applicability of the theft statute to him under the facts sketched above. His argument is two-pronged: first, that the trust requirements of chapter 523A are distinguishable from the kind of trust violations contemplated under section 714.1(2); and, second, since the record contained no proof of loss to any customer, the verdict is not supported by substantial evidence. The district court overruled defendant's motions for judgment of acquittal on these grounds and, we think, rightly so.

▇ A. Ludvigson's first argument rests on his assertion that chapter 523A provides its own penalty for violation of the chapter's many requirements, thereby demonstrating a legislative intent to carve out an exception to the general theft statute and the harsher penalties it exacts. His premise, however, is faulty. Section 523A.2(6) does provide that a seller of funeral services who "knowingly fails to comply with any requirement of *this section* ... commits a serious misdemeanor." (Emphasis added.) But the statute's reference to "this section" limits its application to the essentially ministerial duties listed in section 523A.2 that are incident to establishing and administering the trust mandated by section 523A.1. *See, e.g.,* § 523A.2(1)(a) (directing that funds "held in trust" shall be deposited in an insured account within thirty days); § 523A.2(1)(b) (recordkeeping requirements); § 523A.2(1)(c)(1)–(9) (reporting requirements); and § 523A.2(5) (audit requirements). The nominal penalty for violating these administrative rules does not logically furnish an escape for the failure to segregate eighty percent of the pre-need payments in the first instance. That duty is prescribed by section 523A.1, not section 523A.2.

Nor are we persuaded by Ludvigson's alternate argument that the thirty-day deadline in section 523A.2(1) somehow distinguishes the type of trust governed by chapter 523A from that protected by section 714.1(2). Ludvigson claims that be-

cause the statute is silent regarding use of the funds in the first thirty days it is not a "true" trust. He relies on *Ponzelino v. Ponzelino*, 238 Iowa 201, 203–04, 26 N.W.2d 330, 331–32 (1947), for the proposition that if the trustee's discretion with respect to the trust corpus is "unbridled," no valid and enforceable trust exists.

Ludvigson's reliance on *Ponzelino* is misplaced. The validity and enforceability of the statutory trust provisions of chapter 523A are beyond question. Moreover, Ludvigson's suggestion that trustee responsibilities do not attach upon receipt of the funds ignores the plain language of the statute and this court's decision in *Cedar Memorial Park Cemetery Association v. Personnel Associates, Inc.*, 178 N.W.2d 343 (Iowa 1970).

In *Cedar Memorial* this court analyzed the purpose of section 523A.1 in connection with a challenge to a funeral director's investment of the trust portion of pre-need contract payments. First we held that a fair reading of the statute revealed a legislative intent to impress the seller of such contracts with the responsibilities of a trustee. *Id.* at 351. We then noted that "no rule is more firmly established than that which prohibits a trustee from obtaining any personal benefit, advantage, gain or profit" from the trust property. *Id.* at 352. Finally, we interpreted the words "shall be and remain trust funds" in section 523A.1 to mean that the funds were to remain on deposit pending eventual use as a funeral fund, and that any investment of those funds in the meantime was not permitted. *Id.*

As we stated in *Cedar Memorial*, our duty is to discern the true purpose and meaning of the statute as a whole. *Id.* at 350. We are convinced that the legislative purpose of chapter 523A would be largely eviscerated were we to adopt Ludvigson's argument that sellers of funeral services have free use of pre-need payments for thirty days. We therefore hold that the trustee's duties created by section 523A.1 attach upon receipt of the funds. We interpret section 523A.2's thirty-day limit for placing the funds on deposit as nothing more than a grace period. It has no bearing on the validity of the trust, nor does it exempt the trustee in the interim from statutory duties imposed by section 523A.1.

This analysis of the relationship between sections 523A.1 and 523A.2 also leads us to firmly reject Ludvigson's final argument on this point. He asserts that until the pre-need contract payments become part of a trust account, no violation of the "trust" duties defined by chapter 714 can be proven. In other words, because he never placed the funds in trust, he claims the State has failed to prove a misappropriation of "trust funds."

For the reasons given above, we are convinced the legislature intended the protection of section 523A.1 to attach upon receipt of the funds. Therefore, for purposes of a prosecution under section 714.1(2), receipt of the funds triggers the trustee's obligation to manage the funds consistent with the beneficiary's interest.

B. Ludvigson also contends that because the State offered no proof that any of the five named victims have been denied services or merchandise, the jury's verdict cannot stand. In considering such a challenge, we view the evidence in a light most favorable to the State. *State v. LaPointe*, 418 N.W.2d 49, 51 (Iowa 1988). The State is entitled to the benefit of any legitimate inferences that may fairly be drawn from the evidence in the record. *State v. Bass*, 349 N.W.2d 498, 500 (Iowa 1984). We are obliged to uphold the jury's verdict if it is supported by substantial evidence. *State v. Blair*, 347 N.W.2d 416, 419 (Iowa 1984). Evidence is substantial if it could convince a rational fact finder that the defendant is guilty beyond a reasonable doubt. *LaPointe*, 418 N.W.2d at 51.

As noted earlier in this opinion, the parties offered into evidence a stipulated agreement that from June through December, 1988, Ludvigson knowingly withheld payments from the trust fund in an amount exceeding $298,000. Attached to the written stipulation was a lengthy list of persons who had made such payments, with a notation of the amount that should have been placed in trust. Of those payments,

at least five exceeded the sum of $500. Three out of the five exceeded $1000.

Only one of the named victims demanded funeral services or merchandise during the period in question. Because Ludvigson used the trust payments to finance current operations, no service was denied. The remaining victims, of course, had as yet made no demand for service.

The court instructed the jury that use of the term "misappropriate" in section 714.1(2) means

> that a person, knowing he had no right or permission to do so, exercises control over property or aids a third person in exercise and control, so that the benefit or the value of the property is lost to the owner. Misappropriation may also occur when a person knowingly disposes of the property for his own benefit or for the benefit of a third person.

*See* 2 Iowa Criminal Jury Instructions 1400.6. Ludvigson does not dispute the accuracy of the instruction. He merely argues the record contains insufficient proof that the benefit or value of any property was lost, or that he knowingly disposed of the property for his own or another's benefit.

Given the size of the deficiency in the trust account, and the fact the contract payments were earmarked for *future* use, we think a reasonable fact finder could infer that the benefit of the trust funds was lost to the purchasers of these funeral services. Likewise, a jury could reasonably find that Ludvigson knowingly disposed of the trust property for his own or another's benefit. The record contains substantial evidence that these trust funds were applied toward the payment of salaries and commissions, for Ludvigson and others.

■ Ludvigson's consistent theme, both before the trial court and on appeal, is that he wanted only to do the right thing and that he had no intent to shortchange the customers in any way. But as Ludvigson readily concedes, theft by misappropriation of trust funds is not a specific intent crime. *Eggman v. Scurr*, 311 N.W.2d 77, 80 (Iowa 1981). Consistent with the court's instruc-tion concerning general criminal intent, the jury could infer that Ludvigson intended his knowing and voluntary acts to result in a misappropriation of trust funds. *See id.* There is ample evidence in the record to support the jury's verdict on this element of the theft offense. No reversible error appears.

II. *Evidentiary ruling.* Ludvigson also claims the court abused its discretion when it sustained the State's motion in limine, preventing defense counsel from delving into the fact that state agents, over a period of months, neither advised Ludvig-son that he was suspected of criminal activity nor did they consider him a potential criminal defendant. Ludvigson claimed this evidence, if permitted, would amount to an exculpatory admission against the State's interest. The court disagreed, reasoning that the proffered testimony was not relevant to any issue in the case.

The record plainly reveals that Ludvig-son met with and openly discussed with state agents his involvement in the business decisions at Leopard Enterprises. He testified under oath in both federal bankruptcy court and Polk County district court. The admissions he made in those tribunals formed a substantial part of the case before us.

Like the district court, we are troubled by the fact that no state agent or judge ever cautioned Ludvigson that his candor might be used against him. But we are unaware of any duty resting upon these officials to so advise an individual who is not in custody. *Cf. Miranda v. Arizona,* 384 U.S. 436, 478–79, 86 S.Ct. 1602, 1629–30, 16 L.Ed.2d 694, 726 (1966) (privilege against self-incrimination is jeopardized when person held in custody is questioned without notice of right to remain silent). Moreover, Ludvigson's assigned error does not rest on the court's failure to suppress statements he made. Rather, he sought to expose the officials' silence as evidence of their conviction of his innocence.

■ The district court believed that the inference Ludvigson sought to draw was too attenuated to aid the fact finder. We

agree. Evidence of a party's silence must be received with caution because tacit admissions may be inferred only when the silence is improper or unnatural. *Friedman v. Forest City*, 239 Iowa 112, 133–34, 30 N.W.2d 752, 763 (1948).

■  Here at least two reasonable explanations flow from the officials' silence: a desire not to impair future criminal investigations, or an opinion that Ludvigson had committed no crime. We are convinced that neither inference carries more than a trifling tendency to make the proof of Ludvigson's guilt more or less probable. *See* Iowa R.Evid. 401.

Decisions concerning the relevance of evidence rest in the sound discretion of the trial court. *State v. Gordon*, 354 N.W.2d 783, 784 (Iowa 1984). That discretion has not been abused here. No ground for reversal appears.

AFFIRMED.